[No. 8399-0-II.  Division Two.  September 30, 1985.]

VIRGINIA MITCHELL, *Respondent,* v. JOHN DOE,
ET AL, *Petitioners.*

*F. Michael Misner,* for petitioners.

*Lawrence W. Moore,* for respondent.

WORSWICK, C.J.—Does a grandmother have standing to
petition for visitation with a grandchild who has been
adopted by strangers? The Superior Court, implicitly hold-
ing that there was such standing, granted the grand-
mother's discovery motions. We accepted discretionary
review and now reverse, holding that a grandmother has no
such standing.

The grandchild, H., went to live with her paternal grand-

mother, Virginia Mitchell, soon after her birth in 1973. A few months later, her natural mother died. When H. was 2, her father, Ms. Mitchell's son, took H. to California against Ms. Mitchell's wishes. Ultimately, H. was returned to Washington, her father's parental rights were terminated, and she was placed for adoption. Petitioners, total strangers to H.'s natural family, adopted her in 1977.[1]

Ms. Mitchell's various attempts, between 1977 and 1980, to set aside the adoption and regain custody, or alternatively to obtain visitation, were unsuccessful. Her attempt, between 1980 and 1983, to gain relief from the federal courts also failed. Her attempt in the present action, to pursue multiple damage claims in superior court against the various social agencies involved, failed too. She was, however, allowed to amend her complaint to seek visitation yet another time. The trial court thereafter allowed discovery based on the amended complaint.

Ms. Mitchell would interpose an obstacle at the threshold of our consideration of the standing issue. She argues that this issue has not been raised by any assignment of error in petitioners' brief and that no challenge was made below to the amended complaint. Therefore, she contends, only a narrow question concerning discovery is before us. We are not deterred.

Petitioners' brief, while hardly a model, contains a sufficiently clear statement of issues and related discussion to permit us to consider the standing question pursuant to RAP 10.3(g). Moreover, the futility of any attempt to consider an issue such as discovery in the face of an unresolved question about the right of a party to bring the action at all should be obvious. Jurisdiction—the power of the court to entertain a proceeding—can be raised for the first time on appeal. RAP 2.5(a)(1); *Williams v. Poulsbo Rural Tel. Ass'n*, 87 Wn.2d 636, 555 P.2d 1173 (1976). The rationale for this is self–evident. It would be pointless to consider

---

[1]Petitioners' anonymity has, so far, been preserved. They are identified in this record as John and Jane Doe.

claimed errors where the proceeding itself was incurably defective for lack of jurisdiction. The same rationale applies to standing, the right of a person to press a claim. *Washington Educ. Ass'n v. Shelton Sch. Dist. 309*, 93 Wn.2d 783, 790, 613 P.2d 769 (1980). Facts establishing standing are as essential to a successful claim for relief as is the jurisdiction of a court to grant it. Thus, we hold that the insufficiency of a factual basis to support standing may also be raised for the first time on appeal in accordance with RAP 2.5(a)(2).

Ms. Mitchell claims the right to seek visitation based on RCW 26.09.240 which provides:

> Child custody—Visitation rights. A parent not granted custody of the child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger the child's physical, mental, or emotional health. *The court may order visitation rights for any person when visitation may serve the best interest of the child whether or not there has been any change of circumstances.*
>
> *Any person may petition the court for visitation rights at any time including, but not limited to, custody proceedings [sic].*
>
> The court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child but the court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger the child's physical, mental, or emotional health.

(Italics ours.) The trial court apparently concluded that Ms. Mitchell had standing, because of the emphasized language, to seek visitation even though H. had been adopted by strangers. Our task is straightforward statutory interpretation. Did the Legislature intend this result? We conclude that it did not.

■■ It is apparent that the Legislature did intend by this language to broaden the discretion of trial courts to allow visitation with a child, after a dissolution of its parents' marriage, if the child's interests would warrant it. Accordingly, we approved the exercise of such discretion

vis–a–vis grandparents in *In re Thompson,* 34 Wn. App. 643, 663 P.2d 164 (1983). However, we rejected the very contention that Ms. Mitchell asserts here, that grandparents have rights relating to their grandchildren deriving from the rights of their children. We pointed out that the cases cited in support of this assertion were from states having statutes conferring such derivative rights.[2] Washington has no such statute.

It is not unusual for the language of a statute to confuse or exceed the Legislature's intent. The courts frequently fall heir to the task of determining the legislative objective. *See Cooper's Mobile Homes, Inc. v. Simmons,* 94 Wn.2d 321, 330, 617 P.2d 415 (1980) (Horowitz, J., dissenting). A necessary part of that task is to construe a statute sensibly in order to avoid an absurd result. *Whitehead v. Department of Social & Health Servs.,* 92 Wn.2d 265, 595 P.2d 926 (1979). The purpose for which a statute was enacted is of prime importance. *Washington Water Power Co. v. State Human Rights Comm'n,* 91 Wn.2d 62, 586 P.2d 1149 (1978). A statute should not be construed so as to thwart the legislative purpose. *State v. Dalton,* 13 Wn. App. 94, 533 P.2d 864 (1975).

It would be absurd to argue that anyone walking by a yard, taking a fancy to children seen playing there, has standing to petition for visitation with them. There is, however, little beyond residual sentiment to distinguish Ms. Mitchell's position. The stark fact is that, under Washington law, she is now a stranger to H.

There is no policy stronger or more consistently followed in this state than that protecting the sanctity and privacy of adoptions. When an adoption has become final, previous ties to natural parents are completely severed and a wholly new relationship is created. RCW 26.32.140. The confidentiality of the new, as well as the defunct, relationship

---

[2] It is hard to see how Ms. Mitchell could enjoy *derivative* rights anyway. The parental rights of her son were terminated.

becomes virtually inviolate. RCW 26.32.150.[3] The legislative policy concerning this transformation is reflected not only in the adoption statute, but in the probate code as well. *See* RCW 11.04.085. This policy has been affirmed consistently by the courts. "The legislative policy of providing a 'clean slate' to the adopted child permeates our scheme of adoption." *In re Estates of Donnelly,* 81 Wn.2d 430, 437, 502 P.2d 1163, 60 A.L.R.3d 620 (1972). *See also In re Santore,* 28 Wn. App. 319, 623 P.2d 702, *review denied,* 95 Wn.2d 1019 (1981); *In re Adoption of Baby Girl K.,* 26 Wn. App. 897, 615 P.2d 1310 (1980). The strength of this policy is illustrated by the reaction of our courts to the latter day attempt, buttressed by a wealth of arguments, to strip the mantle of confidentiality from adoption records. That attempt has been firmly rejected. *In re Sage,* 21 Wn. App. 803, 586 P.2d 1201 (1978). *See also The State's Interest in Adoption and Washington's Sealed Records Policy,* 4 U. Puget Sound L. Rev. 351 (1981).[4]

It is beyond our present purpose to define the full reach of the broad discretion conferred on trial courts by RCW 26.09.240. However, it is abundantly clear to us that the Legislature did not intend that statute to alter the protection afforded adopted children and their new families from disturbances by the child's natural family. *See In re Santore,* 28 Wn. App. at 327. Ms. Mitchell has no standing to disturb the new family by seeking visitation. Therefore, it was error to force the new family to submit to discovery.

---

[3] RCW 26.32 was repealed and replaced, effective January 1, 1985, by RCW 26.33. Laws of 1984, ch. 155.

[4] The Legislature's apparent response to this special tumult has been to make adoption records even less accessible to the adopted child. *Compare* RCW 26.33-.330 (Laws of 1984, ch. 155, § 33) *with* RCW 26.32.150 (Laws of 1955, ch. 291, § 15).

Reversed.

REED and PETRICH, JJ., concur.