[No. 31725-3-I.    Division One.    July 5, 1994.]

*In the Matter of the Custody of* B.S.Z.-S.

ANNIE ZINK ROBINSON, *Appellant*, v. LOREN ZINK, ET AL, *Respondents*.

*Sidney S. Rodabough,* for appellant.

*Osgood S. Lovekin, Jr.,* and *Shorett, Hardman, Lovekin & Young,* for respondents.

GROSSE, J. — Annie Zink Robinson (Annie) appeals the summary judgment granted to Loren and Karen Zink (the Zinks), her former husband and his current wife. The judgment denied Annie's petition for the scheduled and enforceable visitation of her granddaughter, B. The trial court held

that Annie had no standing to continue her petition for visitation after B was adopted by the Zinks. *See Bond v. Yount*, 47 Wn. App. 181, 734 P.2d 39 (1987).

B was born on May 4, 1984, to Martin Zink and Terri Struss.[1] Martin Zink and Terri Struss never married, but paternity was established. Martin Zink had no interest in raising B, who lived with Terri Struss and her boyfriend. In 1990, Terri Struss died. B continued to live with her mother's boyfriend for a short time until she was placed with Loren and Karen Zink, her paternal grandfather and stepgrandmother.

Shortly thereafter, the Zinks petitioned for custody of B. Martin Zink consented to the custody decree and the petition was not contested by anyone, including Annie. An amended decree of custody was entered in January of 1991.

In March 1991, the Zinks petitioned for adoption of B. Again, her father consented. However, the adoption was delayed while Child Protective Services (CPS) Adoption Services investigated Annie's claim that Loren Zink had a prior history of molesting children. As a result of these allegations, the Zinks and B participated in various psychological evaluations. Loren Zink also underwent a sexual deviancy evaluation. CPS Adoption Services found the allegations to be baseless.

Later, in July 1991, Annie filed a petition for grandparent visitation. Two Court Appointed Special Advocate Program (CASA) evaluations ensued. The initial report recommended that Annie receive regularly scheduled visitation on the second weekend of each month. The second report recommended visitation not more than once every 3 months.

Before the adoption became final, Annie filed a motion for default judgment on her visitation petition. Subsequent to the filing of the motion and before a hearing on it was held, a decree of adoption was entered. Counsel for the Zinks notified opposing counsel that the adoption was final and indicated his belief that Annie no longer had standing to

---

[1]Martin is the son of Loren Zink and Annie Zink Robinson, who were formerly married.

bring the motion. Annie's counsel went forward with the motion and on the hearing date counsel for the Zinks failed to appear. A default judgment was entered. The default judgment granted visitation of two weekends a month to Annie. Subsequently the default was vacated. A trial date was set. The Zinks brought on a motion for summary judgment seeking dismissal of the petition for visitation.

Annie sought visitation similar to that asked by a natural parent in the course of a dissolution action. The Zinks, now the parents, opposed such a specific visitation schedule. They asserted that visits should be allowed occasionally, whenever B desired to visit and when it was mutually convenient.

Based on the decisions of *Bond v. Yount, supra,* and *Mitchell v. John Doe,* 41 Wn. App. 846, 706 P.2d 1100 (1985), a superior court commissioner held that Annie had no standing to petition for visitation with B once the adoption was final.

Annie appeals the order and claims: (1) that the order on summary judgment failed to comply with CR 56(h); (2) that the *Bond* and *Mitchell* cases are not controlling and/or should be overruled; and (3) that the test in determining visitation should be the "best interests of the child", not the privacy of adoption. We affirm the trial court's decision on the ground that, as a matter of law under applicable statutes and case law, Annie Zink Robinson lacked standing to petition for visitation once the adoption became final.[2]

■ Annie urges this court to reconsider its holding in *Bond v. Yount, supra,* by declining to follow it, or by restricting its holding. The facts of the case before us are remarkably similar to those in *Bond,* and we will not restrict the holding of that case: a grandparent has no standing to petition for visitation rights subsequent to adoption of the grandchild by others, whether strangers or relatives. The

---

[2]Due to the basis of our decision, Annie's other claims do not require discussion. The documents and evidence that were before the commissioner are of little moment considering the initial decision that as a matter of law Annie had no standing to bring a visitation petition. Similarly we need not address the "best interest of the child" rule, because the issue of visitation is never reached.

Zinks' formal adoption of B terminated any visitation rights which her biological paternal grandmother may have had. *Bond v. Yount, supra.* In *Bond*, the maternal grandparents adopted a child and the biological paternal grandparents petitioned for visitation. As here, the grandparents seeking visitation already had a relationship with the child.

The trial court in *Bond* originally ordered visitation rights under former RCW 26.09.240, the statute in effect at the time.[3] We reversed, holding that the adoption terminated any visitation rights of the biological paternal grandparents. Our opinion held that in enacting RCW 26.09.240, the Legislature did not intend "to chip away the strong policy holding the privacy of adoption to be sacrosanct." *Bond*, 47 Wn. App. at 183.

Further, the *Bond* court cited *Mitchell v. John Doe, supra*, which held that grandparents have no standing to petition for visitation with a grandchild who has been adopted by strangers. *Bond* extended the *Mitchell* holding to visitation to blood relatives, stating:

> The only factual difference between *Mitchell* and the case at bar is that this child was not adopted by strangers but by the maternal grandparents. We do not find this distinction sufficient to outweigh the policy underlying adoptions.

*Bond*, 47 Wn. App. at 183.

In arguing that *Bond* should be reversed, Annie contends that the mere fact of adoption should not automatically circumscribe the class of persons who might contribute to the

---

[3]Former RCW 26.09.240 stated in part:

"The court may order visitation rights for any person when visitation may serve the best interest of the child whether or not there has been any change of circumstances.

"Any person may petition the court for visitation rights at any time." Laws of 1987, ch. 460, § 18.

Since *Bond*, the Legislature amended RCW 26.09.240 through Laws of 1989, ch. 375, § 13, effective May 12, 1989. Although quite similar, the revised statute now reads in pertinent part:

"The court may order visitation rights for a person other than a parent when visitation may serve the best interest of the child whether or not there has been any change of circumstances.

"A person other than a parent may petition the court for visitation rights at any time."

best interests of the child. She acknowledges that *Bond* is the law, but attempts to circumvent it by claiming that, under RCW 26.10.160(3), a trial court may still decide whether it is in the best interest of a child to allow the visitation.[4] However, RCW 26.10.160(3) involves nonparental actions for child *custody* and the limitations on visitation rights therein. That statute also contains language similar to former and current RCW 26.09.240.

In contrast to other jurisdictions, Washington does not statutorily recognize the rights of grandparents to visitation, except that they have rights in the context of a child custody proceeding pursuant to RCW 26.10, or in the context of a proceeding for dissolution pursuant to RCW 26.09. RCW 26.09 pertains to custody as between parents and presumes that the child will continue to reside with one or both of those parents. The chapter does its best to continue some semblance of a family relationship for the children of a broken marriage, and in that context the best interests of the children may well encompass visitation with grandparents or others with an ongoing relationship with the children. RCW 26.10 is limited to circumstances where custody is at issue and the child does not reside with a parent or where it is alleged that the parents are not suitable custodians. Again, that statute does its best to preserve family relationships and the provision for petitions for visitation by any person makes sense in that context.

---

[4]Although not cited, there is authority for this proposition. *Bond* was critically viewed by the Colorado Court of Appeals in *In re Marriage of Aragon*, 764 P.2d 419 (Colo. Ct. App. 1988). There, a paternal grandparent appealed from a determination of the court that the grandparent visitation statute operated automatically to terminate a grandparent's right to visitation following final adoption of a grandchild by a stepparent. The court held that a grandparent's visitation rights were not subject to statutory exclusion, and further that a grandparent's visitation rights were statutorily derived and thus not divested by adoption.

The case is interesting in contrast to the one before us. First, Colorado statutes recognized grandparent visitation rights but not specifically with respect to adoptions, thus the court did not have to reach as far as we are being asked to reach. Second, the child in that case was adopted by a new spouse of the natural mother and the court likened this to dissolution and custody situations where the grandparent had the clear statutory right to visitation; in fact it had been previously ordered. Faced with similar facts and statutes we might agree.

■■ Unlike those statutes, the adoption statute has a contrary purpose, at least in the context of an adoption by a new family unit; that is, the creation of that new family. As discussed previously in footnote 3, this could be qualified in the context of an adoption by a new spouse of a natural parent with whom the child resides, but those facts are not present here. Open adoption agreements are statutorily recognized under RCW 26.33.295, but only in specific circumstances.[5] Grandparent visitation is not included within these circumstances.

The statutory maxim that by the expression of one thing the Legislature meant to exclude the other could be applied. However, we consider it equally noteworthy that the decisions in *Mitchell* and *Bond* have been on the books for many years and the Legislature has not acted to change them, even while approving the open adoption provisions in 1990. Thus, we see in this a legislative policy determination that an adoption, in the context such as we have before us, constitutes a fresh beginning for a new family that should be free from interference from third parties.

We are not saying the Legislature could not make a different choice, as the competing policy interests are quite compelling. Grandparents can and do play an important role in the development of a child, and severing that role through adoption might not be in the best interests of the child. However, the ultimate policy is one for the Legislature to determine. Certainly the Legislature could add grandparents to the open adoption provisions should it choose to do so. Even so, it has not yet chosen to permit continued relationships after adoption except by agreement. Therefore we are not in a position to go further and grant standing to a grandparent to interfere with the finality and sanctity of an adoption decree.

---

[5]RCW 26.33.295(1) provides as follows:

"Nothing in this chapter shall be construed to prohibit the parties to a proceeding under this chapter from entering into agreements regarding communication with or contact between child adoptees, adoptive parents, and a birth parent or parents."

The decision of the trial court is affirmed.

COLEMAN and AGID, JJ., concur.