[No. 36737-4-I.   Division One.   July 28, 1997.]

*In the Matter of the Visitation of* NATALIE ANNE TROXEL, ET AL., JENIFER TROXEL, ET AL., *Respondents,* and TOMMIE GRANVILLE, *Appellant.*

*Donald J. Bisagna,* for appellant.

*Mary H. McIntosh* and *Law Office of Mary H. McIntosh*; and *Mark D. Olson* and *Law Office of Mark D. Olson,* for respondents.

Cox, J. — Tommie Granville, n/k/a Wynn, appeals the trial court's visitation award to Jenifer and Gary Troxel, the paternal grandparents of her daughters Natalie and Isabelle. Wynn argues that the grandparents lack standing to petition for two reasons. First, there was no pending custody proceeding at the time of the grandparents' petition. Second, her husband Kelly Wynn adopted both girls.

Wynn also challenges evidentiary rulings by the trial court, contends it applied the wrong standard in making its decision, and maintains the findings and conclusions are inadequate. Moreover, she challenges the constitutionality of the visitation statute. Because the Troxels had no standing to petition for visitation in the absence of a pending custody proceeding, we reverse.

Brad Troxel and Tommie Wynn had a relationship that ended in June 1991. Natalie and Isabelle are their daughters and the granddaughters of Jenifer and Gary Troxel. After the separation, Brad lived with the Troxels and regularly brought Natalie and Isabelle to the Troxels' house for weekend visitation. Brad committed suicide in May 1993. After Brad's death, the Troxels saw Natalie and Isabelle regularly, though the girls did not stay overnight at the Troxel residence. In October 1993, Wynn informed the Troxels that she wished to limit visitation to one short visit per month. The Troxels declined Wynn's offer. Between October and December 1993, they did not see Natalie and Isabelle. They did not resume regular visitation with the girls until April 1994, when a court commissioner entered a temporary visitation order.

In December 1993, Jenifer and Gary Troxel commenced this action, seeking court-ordered visitation with their granddaughters. At the time of trial in December 1994, Natalie and Isabelle were five and almost three years old, respectively.

At trial, the Troxels requested two weekends of overnight visitation per month and two weeks of visitation during the summer. Based on the recommendation of her counselor, Dr. Nora Young, Wynn asked the court to order one day of visitation each month with no overnight stay. Dr. Young also suggested that the grandparents participate in the Wynns' holiday celebrations. The court heard testimony from the Troxels, their son-in-law, and two expert witnesses that Wynn hired. Based on the evidence, the trial court issued its oral ruling and entered a visitation decree ordering visitation of one weekend per

month, one week in the summer, and four hours on the birthday of each of the Troxels.

Wynn sought review. We remanded the case for entry of findings of fact and conclusions of law. We later directed the parties to file additional briefs.

## Standing

Wynn argues that the Troxels lack standing to petition for visitation. The Troxels counter that the plain meaning of RCW 26.10.160(3) allows them to so petition. We hold that the Troxels lack standing because no child custody proceeding was pending when the Troxels commenced this action.

At issue is the meaning of RCW 26.10.160(3). Statutory construction is a question of law that we review de novo.[1] The primary objective of statutory construction is to carry out the intent of the Legislature by examining the language of the statute.[2] We give words their plain meaning unless a contrary intent appears.[3] We also must construe statutes "as a whole in order to ascertain legislative purpose, and thus avoid unlikely, strained or absurd consequences which could result from a literal reading."[4]

RCW 26.10.160(3) provides:

> *Any person* may petition the court for visitation rights *at any time* including, but not limited to, custody proceedings. The court may order visitation rights for *any person* when visitation may serve the best interest of the child whether or not there has been any change of circumstances.[5]

---

[1]*Our Lady of Lourdes Hosp. v. Franklin County*, 120 Wn.2d 439, 443, 842 P.2d 956 (1993).

[2]*Stone v. Chelan County Sheriff's Dep't*, 110 Wn.2d 806, 809, 756 P.2d 736 (1988).

[3]*In re Estate of Little*, 106 Wn.2d 269, 283, 721 P.2d 950 (1986).

[4]*Alderwood Water Dist. v. Pope & Talbot, Inc.*, 62 Wn.2d 319, 321, 382 P.2d 639 (1963).

[5](Emphasis added.)

A literal reading of this statute could lead to the sort of absurd result that our canons of statutory construction forbid. Does "any person" have standing to petition "at any time" for visitation with a child? For example, could a member of the state Legislature who has displeased a constituent find herself faced with the considerable expenditure of time, money, and emotional energy to oppose a wholly frivolous petition by that constituent? Should this occur without any showing that the parent was unfit or that the family was unstable or that the child was otherwise facing any threat to its well-being? Our Legislature could not have intended such an absurd and potentially pernicious result from so broad a reading of the statute.

This court stated in dicta in *In re Custody of B.S.Z.-S.*[6] that the third-party visitation provision in RCW 26.10.160(3) applies only in the context of actions for child custody and questions of visitation that arise in custody actions. RCW 26.10.030(1) provides that a petitioner may commence a third-party child custody proceeding only when a child is not in the custody of one of its parents or if the petition alleges parental unfitness. That limitation is consistent with the constitutional restrictions on state interference with parents' fundamental liberty interest in the "care, custody, and management" of their children.[7] The Legislature could not have intended to open the door to "any" person petitioning for visitation "at any time," having created such strict standing requirements for third-party custody proceedings.

RCW 26.10 is entitled "Nonparental Actions for Child Custody." The Legislature's statement of intent declares that it enacted RCW 26.10 to "reenact and continue the law relating to third-party actions involving custody of

---

[6]74 Wn. App. 727, 731, 875 P.2d 693 (1994).

[7]*See Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982).

minor children."[8] That statement of intent is also consistent with restricting petitions for visitation to custody proceedings, rather than allowing petitioners to commence new proceedings when no custody or other action is pending.

Our reading of the limitations of RCW 26.10.160(3) finds further support in the statutory history of this statute and RCW 26.09.240, a parallel provision. In 1987, the Legislature reenacted and continued the law relating to third party actions involving custody of minor children in order to distinguish it from the 1987 parenting act amendments. The 1987 version of RCW 26.09.240 provided, in part, that "[a]ny person may petition the court for visitation rights at any time." Similarly, RCW 26.10.160, as originally enacted in 1987, provided, in part, that "[a]ny person may petition the court for visitation rights at any time including, but not limited to, custody proceedings."

Aside from some renumbering,[9] the portion of RCW 26.10.160(3) that is relevant to this matter has remained unchanged since enactment. In 1989, the Legislature substituted "a person other than a parent" for "any person" in RCW 26.09.240,[10] but the relevant language remained otherwise unchanged until last year.

In its 1996 session, the Legislature amended RCW 26.09.240 to limit the circumstances under which a non-parent may petition for visitation rights. First, a "person other than a parent may not petition for visitation under this section unless the child's parent or parents have commenced an action under this chapter."[11] Second, even where such an action is pending, a court must dismiss a visitation petition unless the petitioner "can demonstrate by clear and convincing evidence that a significant relation-

---

[8]RCW 26.10.010.

[9]Laws of 1996, ch. 303, § 2, p. 1636; Laws of 1994, ch. 267, § 2, p. 1698; Laws of 1989, ch. 326, § 2, p. 1605.

[10]Laws of 1989, ch. 375, § 13, p. 1969.

[11]RCW 26.09.240(1).

ship exists with the child with whom visitation is sought."[12] If the court dismisses the petition on that basis, the petitioner must pay reasonable attorney fees and costs to the respondent.[13]

■ In 1987, the Legislature enacted virtually identical provisions that have subsequently proceeded on parallel tracks. We can see no plausible reason why the Legislature would amend RCW 26.09.240 and not RCW 26.10.160(3). Therefore, we must assume that the Legislature's failure to similarly amend the latter statute was the result of an unintentional oversight.

■ For all of the reasons discussed above, whether or not the Legislature overlooked amending RCW 26.10.160(3) when it amended RCW 26.09.240, we believe it did intend that a custody proceeding be in effect before third parties could petition for visitation.

Accordingly, we hold that a petition for visitation under RCW 26.10.160(3) must be contemporaneous with a proceeding for child custody.[14] There was no such proceeding when the Troxels filed their petition. The Troxels did not have standing to bring their petition for visitation.

The Troxels argue that they have standing under RCW 26.09.240(1) because of a proceeding in 1992 under the Uniform Parentage Act[15] that resulted in a parenting plan for these children. No such decree is in the record in this case. In any event, Division III of this court has properly rejected the contention that RCW 26.26.130(6) effectively invokes the dissolution statute: "[T]he reference to RCW 26.09 is merely the direction to apply the same procedures and criteria as those used in the Parenting Act of 1987,

---

[12]RCW 26.09.240(3).

[13]RCW 26.09.240(3).

[14]*In re Visitation of Wolcott*, 85 Wn. App. 468, 933 P.2d 1066 (1997).

[15]RCW 26.26.

LAWS OF 1987, ch. 460, in formulating a paternity parenting plan."[16] The Troxels' argument is unpersuasive.

Wynn makes several other challenges to the visitation decree. She argues that her husband's adoption of both girls eliminates the Troxels' right to petition for visitation. She also claims that the trial court abused its discretion by failing to follow the recommendations of her expert witnesses. In addition, Wynn argues that the visitation statute impermissibly interferes with parents' constitutionally protected interest in child-rearing. She also claims that, in determining the best interests of the child in a nonparental visitation proceeding, a court's inquiry should be whether failure to order visitation would be detrimental to the child's development. Alternatively, she suggests that a court should apply the standards of the recently revised statute governing nonparental visitation in dissolution proceedings to the question of the child's best interests. Finally, she argues that, under either test, the findings of fact and conclusions of law in this case were inadequate to support the award. We do not reach these questions because of our disposition based on a lack of standing.

We reverse the visitation decree and dismiss the Troxels' petition for visitation.

GROSSE, J. (concurring) — I write separately to underscore the salient fact behind the majority opinion: The Legislature has rejected the approach advocated by the dissent,[17] and an appeal to the people by initiative failed to gain the requisite signatures.[18] So, while the legislative approach may lack logic and common sense, it is the approach chosen by the policy makers with plenary authority over this subject.

ELLINGTON, J. (dissenting) — I must respectfully dis-

---

[16]*In re Custody of Brown*, 77 Wn. App. 350, 355, 890 P.2d 1080 (1995).

[17]H.B. 1973, 55th Leg., Reg. Sess. (Wash. 1997).

[18]Initiative 672 (initiative failed for lack of signatures).

agree with the majority's construction of the statute involved here, and with its reliance on dicta in *In re Custody of B.S.Z.-S.*, 74 Wn. App. 727, 875 P.2d 693 (1994). I therefore dissent.

Petitioners commenced this action under RCW 26.10-.160(3), which grants to "any person" the opportunity to petition for visitation rights "at any time including, but not limited to, custody proceedings." This language is plain and unambiguous.

As the majority notes, from 1987 to 1996, RCW 26.10.160(3) had a close parallel in RCW 26.09.240, which read:

> The court may order visitation rights for a person other than a parent when visitation may serve the best interest of the child whether or not there has been any change of circumstances.

> A person other than a parent may petition the court for visitation rights at any time.

> The court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child.

In 1996, RCW 26.09.240 was amended to provide, inter alia:

> A person other than a parent may petition the court for visitation with a child at any time or may intervene in a pending dissolution, legal separation, or modification of parenting plan proceeding. A person other than a parent may not petition for visitation *under this section* unless the child's parent or parents have commenced an action *under this chapter*.

RCW 26.09.240(1) (emphasis added).

The limiting language underscored above states a legislative intent to confine the new limitation, requirement of a pending action, to nonparent visitation petitions filed under RCW 26.09, entitled "Dissolution of Marriage—Legal Separation." It does not indicate any intent regarding

nonparent visitation provisions in other chapters. RCW 26.10 is entitled "Nonparental Actions for Child Custody." Its visitation section quoted above was not amended.

The majority concludes the Legislature simply over-looked amending RCW 26.10.160(3) when it amended RCW 26.09.240. While this certainly is a possibility, courts do not read statutes into or out of existence merely because of possible legislative oversight. The concern expressed by the majority is that a literal reading of RCW 26.10.160(3) could lead to absurd results because if "any person" could file a petition, frivolous petitions motivated by greed or hostility might result. I do not share this fear. I heard no reports of such petitions before the 1996 amendment, and trial courts are well-equipped to deal with frivolous peti-tions in any event.

The majority also relies on dicta from *In re Custody of B.S.Z.-S.*, 74 Wn. App. at 731, stating that the third-party custody provision in RCW 26.10.160(3) applies only in the context of custody actions. I must respectfully disagree with that dicta. RCW 26.10.160(3) specifically states that a third-party visitation petition is available "at any time including, but not limited to, custody proceedings." The *B.S.Z.-S.* reading of the statute is not supported by its plain language. It follows that I must respectfully dis-agree with the majority here, when it states, "The Legislature could not have intended to open the door to 'any' person petitioning for visitation 'at any time,' having created strict standing requirements for third-party custody proceedings." Majority at 135. This statement seems to me, with all due respect, entirely conclusory.

The imposition of strict requirements for third-party *custody* petitions does not lead inexorably to the conclu-sion that the same requirements were intended to apply to *visitation* petitions. On the contrary, custody and visita-tion are vastly different matters. A petition for custody amounts to an attempt to wrest one's child permanently from one's care and control. A petition for visitation, on

the other hand, is an attempt merely to gain a claim on some time with the child, and interferes distinctly less in the parents' autonomy. The Legislature can sensibly create different thresholds for these different proceedings.

Previously, this court attempted to construe the governing statute to include "change of circumstances" threshold requirements for third-party petitions. This construction was immediately rejected by the Legislature. In 1976, RCW 26.09.240 read essentially as does RCW 26.10.160(3) today. (Third-party actions were separated in 1987, when RCW 26.10 was passed.) In construing a visitation petition under then RCW 26.09.240, Division II of this court held that "in the absence of a threshold change of status affecting the family unit, RCW 26.09.240 does not authorize the court to grant visitation rights to a third person, including a child's maternal grandparent." *Carlson v. Carlson*, 16 Wn. App. 595, 597, 558 P.2d 836 (1976). The court's enumeration of changes in status which might justify such an order included death of one or both of the natural parents, dissolution or separation, child abuse or abandonment. The court stated:

> In the absence of a threshold situation so affecting the interests of the child with regard to the continuity of the family unit, the welfare of the child will seldom, if ever, be served by a judicially imposed overriding of parental discretion to determine whether a third person, distinct from the basic family unit, shall be permitted the privilege of visitation with the child.

*Carlson*, 16 Wn. App. at 597-98.

Wise as these considerations may have appeared, the Legislature promptly rejected them, amending the statute in 1977 to permit third-party visitation petitions "whether or not there has been any change of circumstances." In *Marriage of Klouse*, 30 Wn. App. 492, 494, 635 P.2d 773 (1981), the court characterized the amendment bluntly: "the impact of the 1977 amendment was to negate the requirement of showing a material change in circumstances."

The language construed in *Klouse* survives today intact in RCW 26.10.160(3), and I believe the majority's attempt to add a standing requirement is as misguided as was the *Carlson* court's attempt to add a threshold requirement. The statute itself contains the Legislature's standard for both threshold and standing, in its requirement that the visitation serve the best interests of the child.

Many considerations could explain a legislative decision to leave RCW 26.10.160(3) unamended. Grandparent visitation issues come most readily to mind. For if a custody action must be pending before a grandparent may petition, then a grandparent whose child is dead—as is the Troxels' son—and who can thus never expect an RCW 26.09 petition opportunity (because no petition will ever be pending under that chapter) also has no recourse under RCW 26.10 *unless* willing to allege the remaining parent is unfit[19] —hardly a prelude to amicable relations among family members. Is there never then to be a circumstance where a child indeed has a fit parent, but also has strong ties to grandparents, warm and beneficial ties which the child's best interests call for protecting?

The limitations which public policy may place on such petitions are fertile grounds for debate. One may ask whether such petitions should be available at all in cases where both parents live with the children and oppose the petition, whether death or divorce or separation should affect, and, if so, how; whether adoption by a step-parent should affect, and so on.[20] But these are matters for the Legislature, and for now, the current statute expresses one policy approach: any person may petition at any time, so long as the child's best interests are served. It cannot

---

[19]The allegation required is that the child has no fit parent, or placement with an otherwise fit parent would be detrimental to the child. *See Custody of Stell*, 56 Wn. App. 356, 365, 783 P.2d 615 (1989).

[20]These issues are frequent topics in the current legal literature. *See e.g.*, Joan C. Bohl, *The "Unprecedented Intrusion": A Survey and Analysis of Selected Grandparent Visitation Cases*, 49 OKLA. L. REV. 29 (1996).

be said that this approach is absurd, or even out of harmony with RCW 26.09.240.[21]

I must thus respectfully dissent from the reasoning and result of the majority, and from its holding that under RCW 26.10.160(3), a custody petition must be pending before a visitation petition will lie.[22]

I would not simply affirm, however. The trial court here was not presented with any guidance as to the proper test to be applied in a case such as this. The findings necessary to order visitation over the objections of a parent are thus not in the record, and I would remand for further proceedings. And while I believe RCW 26.10.160(3) should not be read as incorporating the standing requirement of RCW 26.09.240, I would freely and generously borrow from RCW 26.09.240 its excellent, albeit not exhaustive, list of factors indicating whether third-party visitation is in the best interests of the child. See RCW 26.09.240(5)(a). A significant preexisting relationship, balanced against the impact on the existing family structure, is the framework. Within that framework, each case will be different. Because these factors were not addressed by the trial court, I would remand for further proceedings.

One final issue remains. These children have been adopted by their stepfather, or so the briefs advise us. Under *Mitchell v. John Doe*, 41 Wn. App. 846, 706 P.2d 1100 (1985), and *Bond v. Yount*, 47 Wn. App. 181, 734 P.2d 39 (1987), adoption—by strangers *or relatives*—terminates standing to petition for visitation. These holdings are premised on a privacy rationale:

> There is no policy stronger or more consistently followed in this state than that protecting the sanctity and privacy of

---

[21]As to the issue of constitutionality of nonparent visitation, I assume for purposes of this dissent the constitutionality of the present statute and expect to maintain that conclusion in the future, but proper analysis of those issues awaits their presentation on more extensive briefing than was submitted here.

[22]It follows that I must respectfully disagree with the opinion reaching the same result in *In re Visitation of Justin Ross Wolcott*, 85 Wn. App. 468, 933 P.2d 1066 (1997).

adoptions. When an adoption has become final, previous ties to natural parents are completely severed and a wholly new relationship is created. The confidentiality of the new, as well as the defunct, relationship becomes virtually inviolate. The legislative policy concerning this transformation is reflected not only in the adoption statute, but in the probate code as well. This policy has been affirmed consistently by the courts. "The legislative policy of providing a 'clean slate' to the adopted child permeates our scheme of adoption." The strength of this policy is illustrated by the reaction of our courts to the latter day attempt, buttressed by a wealth of arguments, to strip the mantle of confidentiality from adoption records. That attempt has been firmly rejected.

*Mitchell*, 41 Wn. App. at 849-50 (citations and footnote omitted) (quoting *In re Estates of Donnelly*, 81 Wn.2d 430, 437, 502 P.2d 1163, 60 A.L.R.3d 620 (1972)).

Not only has the legislative concern for privacy lessened somewhat since *Mitchell*,[23] the rationale is inapplicable here in any event. Where a stepparent adopts, ties to one natural parent remain intact, and virtually no confidentiality concerns exist. I would therefore be cautious about applying the *Mitchell* rationale to these facts. Nor have the parties fully briefed the issues. I thus would not hold standing terminated upon the adoption.

In sum, I would remand. I therefore dissent.

Review granted at 133 Wn.2d 1028 (1998).

---

[23]See RCW 26.33.295 (authorizing open adoption agreements) and RCW 26.33.343 (authorizing limited searches for birthparents of an adopted child).