**In the Interests of T.L.M.**

**(DOB April 30, 2001)**

**No. CK02–04649.**
**Petition No. 02–32815.**

Family Court of Delaware,
Kent County.

Submitted: May 12, 2003.
Decided: June 9, 2003.

---

Kevin M. Howard, Young & Malmberg, Dover, DE, for Carolyn Miller.

Paula A. Fontello, Department of Justice, Dover, DE, for the Division of Family Services.

Melynda A. Miller and Milton Miller, Respondents Pro Se.

Angela M. Fowler, Dover, DE, for the Office of the Child Advocate.

## OPINION

WALLS, J.

This matter is before the Court on a request by the paternal grandmother to have visitation with her grandchild. The Court is asked to decide whether a grandparent is entitled to visitation with their grandchild over the objections of the natural parents, whose parental rights have been terminated, over the objections of the intended adoptive parents, and over the objections of the custodian.[1]

### PROCEDURAL BACKGROUND

The minor child is now approximately two years old and has been in foster home placement since August 7, 2001, when the Division of Family Services received custody because of neglect on the part of the natural parents. On October 30, 2002, pa-

---

1. A petition for adoption has not been filed, nor is the action pending. The custodian is the Division of Family Services, who holds custody and, as a result of the termination of parental rights, now holds parental rights over the child. The intended adoptive parents, who are also the foster parents, are the maternal grandparents.

ternal grandmother filed the present petition for visitation, which was subsequently consolidated with the hearing on the termination of parental rights. On May 5, 2003, the parental rights of the natural parents were terminated and transferred to the Division of Family Services for purpose of adoption.[2] On May 12, 2003, the hearing on the paternal grandmother's request for visitation was held. This is the Court's decision on her request.

### FINDINGS OF FACT

After discovering that the child had been placed in a foster home, the parental grandmother contacted the Division of Family Services to arrange visitation. This contact was unsuccessful because it was the policy of the Division of Family Services to give deference to the wishes of the natural parents and the natural parents did not wish for the child to have any contact with the paternal grandmother. Subsequent attempts to contact the child were made by the paternal grandmother and, although few, those too were unsuccessful, except for one visit around Christmas time to drop off presents.

The natural parents have consistently objected to the paternal grandmother having visitation because of conflict between the paternal grandmother and the natural father. At one time, the natural parents and the child lived with the paternal grandmother. This living arrangement was short-lived when the paternal grandmother accused the natural father of theft. A warrant for the arrest of the natural father for theft was issued and he was arrested. The theft charge was subsequently dropped because of insufficient evidence.[3] Because of the accusation of theft, the natural father severed his ties with the paternal grandmother. Since that time, he has resisted any attempts by the paternal grandmother to contact the child, even though the child was no longer in his custody, but in the custody of the Division of Family Services. The maternal grandparents also resisted visitation. The Division of Family Services did not allow visitation because it is their policy to honor the wishes of a natural parent and the intended adoptive parents, which in this case are the maternal grandparents, who are also the foster parents. The guardian *ad litem* for the minor child asked that the visitation not be awarded to the paternal grandmother because such would not be in the best interests of the child because the child would be in the home of the maternal grandparents, and this could lead to a strained relationship and emotional concerns among family members, especially the child.[4] No other reasons where brought forward to prohibit visitation between the child and the paternal grandmother and it appears that no party claimed that the paternal grandmother is not a suitable, fit and good grandparent.

### APPLICABLE LAW

The legal issue confronting the Court is the entitlement of visitation by a grandparent with their grandchild, after the child has been the subject of a termination of parental rights order. In Delaware, there exists a statute commonly referred to as

---

2. The Termination of Parental Rights Order was based upon consent, but conditioned upon an open adoption as contemplated under 13 *Del. C.* § 929. However, no adoption petition has been filed.

3. The Court must assume that probable cause for the arrest existed or no warrant would have been issued.

4. The guardian *ad litem's* position was based upon the emotional well-being of the child. The concerns were speculative.

"Grandparents Visitation Statute." [5] This statute sets forth the rights of grandparents to have visitation with their grandchild. The statute explicitly states that when the natural parents or adoptive parents are cohabiting as husband and wife, no visitation shall be afforded grandparents over the objections of both parents. The statute further states that the Court should always consider the best interests of the child in awarding grandparent visitation, irrespective of the wishes of the parents. This statute is similar to statutes of other states granting grandparent visitations, which have recently come under attack by the United States Supreme Court.[6] In *Troxel*, the United States Supreme Court held that the natural parents have a constitutionally protected right in the raising of their children and that decisions by the natural parents regarding who may have visitation with the minor child shall not be questioned unless such decision is unreasonable. By this holding, the United States Supreme Court has placed the burden upon the parties seeking visitation to show that the parents' decision is not reasonable and the Court may not substitute its judgment for what it believes to be in the child's best interests over the judgment of the parents. Therefore, there exists a presumption that the natural parents' decision is made in the best interests of the minor child and, thus,

it is the burden of the party seeking visitation to show that the parents' decision was not reasonable.

## APPLICATION OF TROXEL

■ Although *Troxel* gives us guidance on how to decide the matter before the Court, *Troxel* is not controlling. *Troxel* was decided upon the constitutional rights of a natural parent, not a state agency.[7] The Court has before it a request by a paternal grandparent to have visitation. This request is being opposed by the Division of Family Services who has custody of the child and who was recently transferred all parental rights. For all intents and purposes, the natural parents have controlled the visitation decision under the cloak of being the natural parents. However, their rights as parents were terminated and they have not held custody since July of 2001. They are determined by the Court to be unfit parents and shall not be afforded the support of the holding in *Troxel*.[8] Even if the decisions of the natural parents and the Division of Family Services, as custodian, are subject to *Troxel*, they are not afforded the protection of the presumption that the decision was made in the best interests of the child. Furthermore, by relying solely upon the natural parents' decision, the Division of

---

**5.** 10 *Del. C.* § 1031(7) reads:

"(7) Upon petition thereto, grant grandparents reasonable visitation regardless of marital status of the parents of the child or the relationship of the grandparents to the person having custody of the child; provided however:

(a) That when the natural or adoptive parents or the child are cohabiting as husband and wife, grandparental visitation may not be granted over both parent's objection. The trier of fact shall make the ultimate decision based upon the best interest of the child."

**6.** *See, Troxel v. Granville,* 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000).

**7.** *Troxel* at 66, 120 S.Ct. 2054. *Troxel* was decided upon the due process clause of the Fourteenth Amendment to the United States Constitution. The Fourteenth Amendment is a safeguard given individuals from intrusive state actions.

**8.** *Troxel* at 67, 120 S.Ct. 2054. Constitutional standards do not apply to the natural parents once their rights were terminated.

Family Services has ignored its responsibility as custodian to act in the best interests of the minor child.

## APPLICATION OF BEST INTERESTS

 Visitation shall be determined by applying what is in the best interests of this child. Delaware allows visitation regardless of the natural or legal relationship between the child and the person requesting visitation, so long as such is in the best interests of the child.[9] What is unusual about this matter is that but for the legal ramifications of an Order terminating and transferring parental rights and an intended subsequent adoption, the physical relationships of the parties will remain the same. The maternal grandparents will become the adoptive parents and the natural parents will become third parties, but will enjoy a relationship with the adoptive parents. Because of the Order terminating and transferring parental rights, the paternal grandmother will become a third party to the child but would remain the natural mother and mother-in-law to the ex-natural parents and still an in-law with the maternal grandparents.[10] It appears that all family members, past and present, will have contact with the child, except the paternal grandmother. Such exclusive relationship is not in the best interests of the minor child and none of the opposing parties have brought forth any reasonable explanation as to why contact between the paternal grandmother and the minor child should be prohibited, especially in light of the fact that the paternal grandmother is a fit and stable person and has a lasting, caring relationship with her other grandchildren. The parties argue that there have been many months of this child's short life without contact with the paternal grandmother. However, lack of contact is not the fault of the paternal grandmother or the child. The Division of Family Services denied visitation between the paternal grandmother and the minor child based upon the decision of a natural parent. Although the Division of Family Services may place great weight upon the wishes of the natural parents, they did so knowing that the natural parents had the inability to care for their child. The only explanation by the Division of Family Services as to why visitation should not take place is because the natural parents and foster and intended adoptive parents are opposed to it. For lack of a better explanation, the Court believes that the natural father has used the child as punishment towards the paternal grandmother because of his arrest for theft.[11] Based upon what is in this child's best interests, and consideration of all relevant facts before the Court, the visitation request must be granted. To deny visitation would deny this child the opportunity to develop a loving and caring relationship with the paternal grandparent and, thus, exclude him from the paternal side of the family. The best interests of the child are served by allowing an avenue on which he can regain or establish a relationship with the existing family members.

Accordingly, the paternal grandmother's petition for visitation is hereby granted and the paternal grandmother shall enjoy

9. *Rogers v. Trent*, Del.Supr., 594 A.2d 32 (1991), *See*, 13 *Del. C.* § 728.

10. The scenarios can go on and on. Only the child's legal, not practical, relationship will be changed.

11. Furthermore, although their standing is questionable, the foster parents' concerns rest more upon speculation than definitive facts.

 

visitation with the minor child, consisting of a Sunday afternoon from noon until 5:00 p.m., every third Sunday, beginning Sunday, June 15, 2003. Arrangements for the pickup and dropoff of the child for visitation shall be arranged between the Division of Family Services, or its designee, and the paternal grandmother.

**IT IS SO ORDERED.**