4 A.3d 423 (2010)
In re the Matter of John S. McCLEAN.[1]
Kate McClean, Petitioners,
v.
Diane Doty, Daniel A. Doty, Respondents.
In the Interest of Brett J. McClean (f/k/a Brett J. Stolz, Jr.) DOB: January 09, 2003.
File No. CS06-01158. Petition No. 10-12243.
Family Court of Delaware, Sussex County.
Submitted: June 30, 2010.
Decided: August 26, 2010.
*424 Stephen Welsh, Esquire, The Law Office of Edward C. Gill, P.A., Georgetown, DE, Attorney for John and Kate McClean.
Patrick Vanderslice, Esquire, The Law Office of Moore and Rutt, P.A., Georgetown, DE, Attorney for Diane and Daniel Doty.
HENRIKSEN, J.
This is the Court's Decision and Order on the motion filed by the petitioners, the child's biological mother and adoptive father, asking this Court to set the standard the Court should use in considering Petitioners' request to modify visitation presently enjoyed between the abovenamed minor child and Diane Doty, the child's biological paternal grandmother, and her husband Daniel A. Doty. Biological Father's mother and her husband were awarded grandparent visitation pursuant to an Order issued following a contested hearing. The contested hearing and resulting Order were held and issued, respectively, prior to Biological Father's parental rights being terminated and the child then being adopted by petitioning Adoptive Father. Mother and Adoptive Father want the Court to impose a standard that would now require Biological Paternal Grandmother and her husband to prove the child is dependent and/or neglected in the care of Mother and Adoptive Father in order for them to continue their present Court ordered visitation. Biological Paternal Grandmother and her husband aver any modification of their visitation, if at all, shall only be considered if such a modification is in the child's best interest.
In a Decision dated August 09, 2007, this Court granted the respondents, the then paternal grandmother and step-grandfather of the child, rather frequent and liberal visitation following the standard visitation guidelines then generally followed by the Family Court of the State of Delaware.[2] As such, Respondents, who for simplicity in this Decision will be referred to as "Paternal Grandparents," were awarded visitation on alternate weekends, one evening per week once the child enters kindergarten, alternating holidays, alternating school vacations, and four weeks of extended visitation every summer. In arriving at this decision, the Court accepted the child's biological father's statement that he had no desire to see the child, but he believed his own mother and step-father should be able to see the child. Biological Father described the paternal grandparents as "very loving grandparents who present no danger to the child."[3] The Court's Decision noted the frequent involvement of the paternal grandparents in the child's life. The Court's Decision also noted the paternal grandparents often intervened for the safety of the child against the biological father on behalf of the child's biological mother. Not only were Paternal Grandparents involved in the child's life, but other members of Biological Father's extended family had also been considerably involved in the majority of the child's life.
In making its visitation decision in 2007, the Court placed upon the grandparents the burden of establishing by a preponderance of the evidence that visitation with the grandparents was in the best interest of the child. The Court's Decision also recognized the necessity of giving Mother's opinion great weight, especially where there was no testimony presented at the hearing that Mother was an unfit parent. *425 At the time, however, the Court found that Mother could not provide any legitimate reasons as to why Paternal Grandparents should not continue to be involved in the child's life. The Court concluded, "it was quite apparent to the Court that the paternal grandparents' involvement in this child's life, along with the involvement of the extended family through them, was beneficial to this child's growth and development."[4]
At the time of the hearing which led to the August 09, 2007 Order, Mother and the now Adoptive Father had just married on July 07, 2007. They informed the Court that they planned to file a petition to terminate Biological Father's parental rights, with Mother's new husband intending to adopt the child.
Biological Father's paternal rights were terminated by Order dated August 21, 2009. Adoption of the child was granted on September 23, 2009, at which time the child's legal name was changed.
At the time of the hearing leading to the Court's Decision and Order dated August 09, 2007, the Delaware Legislature had provided grandparents with reasonable visitation rights.[5] Furthermore, the Legislature had provided, "that wherever practical, the Court shall provide that the paternal grandparents' visitation time shall occur when the child is placed with or has visitation with Father ..."[6] Although the grandparent statute stated that grandparent visitation could not be granted over the objection of both parents, natural or adoptive, when the parents were cohabiting as husband and wife, the law also added, "the trier of facts shall make the ultimate decision based upon the best interest of the child."[7] The statute therefore basically followed the guidance provided in the United States Supreme Court Decision of Troxel v. Granville which held that a fit parent's decision about whether to grant grandparent visitation must be afforded great weight, and the burden of proof falls upon the grandparents to show that their visitation is in the best interest of the child.[8]
On June 16, 2009, Delaware adopted a third-party visitation statute which can be found in Title 13 of the Delaware Code, beginning at section 2410. This statute expands beyond just grandparents a group of persons who can seek third-party visitation. The statute permits, subject to certain limitations, a person to seek visitation with a child where that person "has a substantial and positive prior relationship with the child."[9] The Court cannot help but note the Delaware Supreme Court in 1991 already recognized the right of Family Court Judges to award third-party visitation where the Court determined such visitation was in the best interest of a child.[10]

Opinion
The new third-party visitation statute makes it difficult for a parent and their relatives from exercising third-party visitation, even though they had a substantial positive prior relationship with a child, where the parent's rights have been terminated in the child.[11] Thus, a parent whose *426 rights have been terminated in a child, as well as their relatives, are prohibited from filing a third-party visitation petition unless one of the following three exceptions applies:
(1) More than three years have passed since the termination of parental rights order was entered and the child has not been adopted; or
(2) The adoptive parents are agreeable and their notarized consent is attached to the petition; or
(3) The adoptive parents have previously entered into a written notarized agreement or court-approved agreement for continued visitation and a copy of the agreement is attached to the petition.[12]
The facts of the present case, however, are distinguishable from the statutory restriction prohibiting a terminated parent or their relatives from filing for third-party visitation, because the paternal grandparents in this action are not filing for visitation. Instead, they already are exercising visitation pursuant to this Court's prior Order dated August 09, 2007, which was issued following a contested hearing.[13] As can be seen from the reading of that Decision, the Court gave great weight to the then fit custodial mother's opinion but found Mother's reasons for objecting to grandparent visitation to be overwhelmingly outweighed by the benefit to the child to be gained by permitting visitation with the paternal grandparents and extended family.[14] Although Adoptive Father argues his constitutional rights as a parent to the child were not protected in the Court's prior Decision, Adoptive Father had not adopted the child as of the date of the prior hearing, and he therefore had no standing to raise such an objection at that time. The Court can think of no legal basis which would now allow Adoptive Father to retroactively raise a constitutional objection, especially where Mother's constitutional rights, similar to the rights that would have been Adoptive Father's, were taken into account at the time.
One of my colleagues on the Family Court Bench has recently found the newly enacted third-party visitation statute to be unconstitutional as written.[15] As I understand Judge Newell's opinion, he found the present third-party visitation statute to be unconstitutional, because it unfairly failed to provide a single parent the same right of an absolute veto given by the statute to two parents to veto requests for third-party visitation.[16] The two-parent veto could be overridden only when it could be shown the child was dependent, neglected, or abused in the care of either of the parents.[17]
In the present case, where the child now has an adoptive father and a biological mother, and together, they object to visitation by the grandparents, or at minimum, would like to limit the same, these parents aver that the current statute gives them an absolute veto power over grandparent visitation, because it has not been shown by the grandparents that the child is dependent, neglected or abused in either of their care. Even if the statute stands constitutional muster contrary to the very well reasoned arguments in Judge Newell's decision where the child only had one parent *427 objecting, this Judge would have serious concern that the present wording of the statute, appearing to allow an absolute veto of the parents opposing third-party visitation unless a child is dependent, neglected or abused in their care, fails to protect the best interest of the child where the grandparents can prove over the parents' objection that their contact and visitation with the child would be in the child's best interest. The Court believes its concern is in line with the holding of the United States Supreme Court in the Troxel case,[18] which approach has also been adopted in Delaware.[19]
There is also a final provision in the newly enacted third-party visitation statute, set forth in Title 13, Section 2413 of the Delaware Code, that would apply to the circumstances of the present action, where this Court has already entered an Order providing grandparent's visitation. The statute states "[a]n order granting third-party visitation may be modified at any time if the best interests of any child subject to the order would be served by modification."[20]
The issue of whether the termination of the parental rights of a parent affects visitation rights of that parent's parents is not a new issue to Delaware. Family Court Judge Walls, in his 2003 Decision in the case of In the Interest of T.L.M., granted a grandparent visitation with his grandchild over the objections of the natural parents, whose parental rights had been terminated, over the objections of the intended adoptive parents, and over the objections of the custodian, who at the time was the Division of Family Services.[21] Judge Walls focused on the best interest of the child. While keeping in mind the recent United States Supreme Court case of Troxel v. Granville, Judge Walls awarded visitation to the grandparent so the child would not be denied the opportunity to develop a loving and caring relationship with the paternal grandparent and others on the paternal side of the family.
In a subsequent 2006 Decision, Family Court Judge Walls was asked by a mother and adoptive father to terminate the visitation rights of the biological paternal grandparents.[22] In the W.G. v. L.P. case, the natural parents and grandparents had entered into a consent order granting grandparent visitation. The consent order provided a statement "that it would survive any termination of parental rights procedures brought against the natural father."[23] The natural parents divorced, the mother married, and her husband adopted the child after the Court terminated the natural father's parental rights. Judge Walls again addressed the need to give special weight to the objections of fit parents as set forth in the United States Supreme Court Troxel case.[24] While recognizing the need to give the wishes of the parents' great weight, Judge Walls also indicated that the parents' wishes are "not the exclusive determining factor."[25] Judge Walls believed Mother's signature on the original Consent Order demonstrated her intentions to permit the grandparents *428 to have visitation, even if the grandparents' son eventually lost his parental rights in the child. The Decision reflects the child had a long-standing and beneficial relationship with the grandparents. Despite acknowledging Mother's desire to move on and start a new life for her and her new husband free from possible entanglements from her former in-laws, Judge Walls determined the child's best interest required continued contact with the grandparents.
The case of W.G. v. L.P. has striking similarities to the case now before the Court, except that grandparent visitation rights were awarded to the grandparents in the present case after a contested hearing rather than as part of a mere consent order as in W.G. v. L.P. But in each case, a mother who once enjoyed a good relationship with the paternal grandparents, had entered into a new relationship and was likely attempting to distance herself from her former significant other's parents to move on in her new life with her new husband. Should the Court foster and promote the new spousal and family relationship by cutting old important ties; or should the Court protect against the child's loss of important and significant bonds previously enjoyed with the paternal grandparents and other extended family?
The Court has considered how jurisdictions outside of Delaware handle the aforesaid question and whether a formal adoption of a child should terminate any visitation rights which a biological grandparent may have had. The cases seem to be of split authority. In a 1988 Decision, the Colorado Court of Appeals, in a case identified as In re Marriage of Aragon, held that grandparents' visitation rights, being statutorily derived, were not divested by adoption.[26] The Colorado Court refused to accept the parents' argument that the grandparents' visitation rights were derivative of the natural parents' rights with respect to the child, and therefore, were divested by adoption.[27] The Colorado Court agreed that adoption divested a natural parent of all legal rights and obligations with respect to the child.[28] But since the grandparents' right of visitation is statutorily derived, the Court held that the grandparents' visitation rights, "unless otherwise provided by statute, is not dependent upon the parent's continued relationship with the child."[29] The Colorado Court reasoned that by "the exercise of judicial discretion on a case-by-case basis, rather than by automatic exclusion of grandparent visitation rights upon adoption, the best interest of the child will be better served."[30]
In a 1994 Decision, the State of Washington's Court of Appeals took a different position.[31] They held that a formal adoption of a child terminated any visitation rights which biological grandmother may have had.[32] The Washington Court discussed the desire of the Washington Legislature to place emphasis on preserving a new family unit free from interference from old relationships.[33]
Reading the decisions of the Colorado and Washington Courts alone, it is this *429 Judge's opinion that Delaware shares much more in common with the legislature's view in the State of Colorado, where a child's best interest is given precedence, as opposed to in Washington, where the legislature's emphasis is to give a fresh beginning for a new family. Like Colorado, Delaware has a grandparent visitation statute. The Washington Court made specific note how other jurisdictions statutorily recognized grandparent visitation, while the State of Washington did not.[34]
More recently in 2005, the Supreme Court of Wyoming held that paternal grandparents had no right under adoption statutes or grandparent visitation statutes to continue visitation with a grandchild following the adoption by the maternal grandparents.[35] The Decision is worth reading since it provides a summary of many cases around the country which have faced this very issue. The case also brings into focus the competing public policy interests involved when recognizing the issue of whether to maintain or terminate the visitation rights of the side of the family where the parent's rights have been terminated. As illustrated by the aforementioned decision of the Colorado Court of Appeals in the In re Marriage of Aragon case, one important public policy interest noted by the Wyoming Court is the desire to foster the best interest of the child by maintaining the child's relationship with grandparents.[36] The other policy noted by the Wyoming Court, as already discussed in the Washington Court of Appeals decision in the B.S.Z-S. case, fosters the desire to give a fresh start to the new adoptive family free from past relationships.[37] The majority opinion in the Hede case, in reviewing what it termed as "Wyoming's century-old adoption statutes,"[38] held the grandparent visitation statute could only permit grandparent visitation rights to survive adoption if specifically provided for in the statute.[39] The Chief Justice of the Supreme Court of Wyoming offered a dissenting opinion.[40] In his dissenting opinion he believed the paramount consideration that should have been followed by the Court was the best interest of the child.[41]
In the most recent case the Court could find on the issue, decided March 31, 2009, the Missouri Court of Appeals indirectly held that the grandparents did not automatically lose their visitation rights as a result of the termination of the parental rights of mother and father.[42] The Missouri Legislature certainly had given thought to the affect of an adoption on grandparent visitation where their statute provided that a grandparent's right to maintain visitation "may terminate upon the adoption of the child." (Emphasis added).[43] The Missouri Court interpreted this language to be discretionary, rather than mandatory.[44]
Finally, the Court reviewed the Delaware statutes which discuss the effect of the termination of parental rights and adoption. Title 13, Section 1113(a) of the *430 Delaware Code limits the effect of a termination of parental rights to terminating forever "all of the rights, duties, privileges and obligations recognized by law between the person or persons whose parental rights were terminated in the child." There is no mention in this particular subsection of terminating "all of the rights, duties, privileges and obligations" of the collateral or lineal relatives of the parent whose rights were terminated. However, in subsection (b) of Title 13, Section 1113 of the Delaware Code, a termination order extinguishes all statutory rights of inheritance between the child and the parent, as well as between the child and the "collateral or lineal relatives" of the parent whose rights were terminated. Title 13, Section 1113(c) of the Delaware Code, recognizes the ability of any person, despite the entry of a termination order, to devise or bequeath a portion of their property to another by will.
The effect of a decree of adoption upon the terminated parent and his/her lineal or collateral relatives is the same as the effect of the just noted termination statutes. Thus, an adoption decree extinguishes the statutory rights of inheritance between a child and its natural parent, as well as between the child and the collateral or lineal relatives of the natural parent.[45] The adoption statute, when considering the extinguishment of general rights and privileges to the child, only makes reference to extinguishing the rights or privileges of the terminated parent.[46]
In conclusion, Delaware has a statute providing for grandparent visitation. That statute has been interpreted in light of the United States Supreme Court Decision in Troxel v. Granville.[47] In doing so, the Delaware Courts in awarding grand-parent visitation, must give great weight to the opinion of a fit parent, whether it be biological or adoptive, but may award grandparent visitation where the grandparents can establish that visitation between the grandparent and the child is in the child's best interest. It appears that Delaware is a state that places the policy of promoting a child's best interest by preserving past relationships over the policy of disregarding past beneficial relationships in favor of giving a fresh start to a new family. Delaware's termination and adoption statutes are also clear in their intent to extinguish statutory rights of inheritance between a child and its terminated parent, as well as collateral and lineal descendents of the terminated parent. However, these same termination and adoption statutes limit termination of rights and privileges with the child to only the terminated parent. As such, the request by the Mother and Adoptive Father to modify Paternal Grandparents' visitation rights shall be reviewed by considering the best interest of the child. Paternal Grandparents shall not need first to prove the child would be dependent, neglected or abused in the care of his biological mother or adoptive father in order to continue with their visitation over the objection of the cohabiting mother and adoptive father. This Opinion does not state, however, that unreasonable intrusions by past relatives that prohibit the positive growth and interest of the new family should not be considered in weighing what is ultimately in the child's best interest.
IT IS SO ORDERED this 26th day of August, 2010.
NOTES
[1] Pseudonyms have been substituted for the names of the parties pursuant to Delaware Supreme Court Rule 7(d).
[2] D.D. v. K.M., No. CS06-01158, 2007 WL 3171680 (Del.Fam.Ct. Aug. 9, 2007).
[3] Id.
[4] Id.
[5] DEL. CODE ANN. tit. 10, § 1031(7).
[6] DEL. CODE ANN. tit. 10, § 1031(7)b.
[7] DEL. CODE ANN. tit. 10, § 1031(7)a.
[8] Troxel v. Granville. 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000).
[9] DEL. CODE ANN. tit. 13, § 2410(a) (2009).
[10] Rogers v. Trent, 594 A.2d 32 (1991).
[11] DEL. CODE ANN. tit. 13, § 2410(d) (2009).
[12] DEL. CODE ANN. tit. 13, § 2410(d)(1)-(3) (2009).
[13] D.D. v. K.M., No. CS06-01158, 2007 WL 3171680 (Del.Fam.Ct. Aug. 9, 2007).
[14] Id.
[15] C.M.G. v. L.M.S., No. CN04-08601, 2009 WL 5697870 (Del.Fam.Ct. Dec. 21, 2009).
[16] Id.
[17] Id.
[18] Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000).
[19] Thomas v. Nichols-Jones, 909 A.2d 595 (Table) (Del.2006).
[20] DEL. CODE ANN. tit. 13, § 2413 (2009).
[21] In re T.L.M., 852 A.2d 38 (Del.Fam.Ct. 2003).
[22] W.G. v. L.P., 2006 WL 4043763 (Del.Fam. Ct. Nov. 17, 2006).
[23] Id.
[24] Id.
[25] Id.
[26] In re Marriage of Aragon, 764 P.2d 419 (Colo.Ct.App.1988).
[27] Id. at 421.
[28] Id.
[29] Id. at 421-22.
[30] Id.
[31] In re Custody of B.S.Z-S., 74 Wash.App. 727, 875 P.2d 693 (1994).
[32] Id. at 732, 875 P.2d 693.
[33] Id.
[34] Id. at 696.
[35] Hede v. Gilstrap, 107 P.3d 158 (Wyo.2005).
[36] Id. at 165.
[37] Id.
[38] Id. at 175.
[39] Id.
[40] Id.
[41] Id.
[42] In re C.A.C., 282 S.W.3d 862 (Mo.Ct.App. 2009).
[43] Id. at 865.
[44] Id. at 866.
[45] DEL. CODE ANN. tit. 13, § 920(a) (2009).
[46] DEL. CODE ANN. tit. 13, § 919(b) (2009).
[47] Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000).