Michigan Supreme Court
Lansing, Michigan 48909

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JULY 31, 2003**

THERESA O'DAY DEROSE, also known as
THERESA SEYMOUR,

    Plaintiff Third-Party
    Defendant-Appellee,

v                          No. 121246

JOSEPH ALLEN DEROSE,

    Defendant-Appellee,

and

CATHERINE DEROSE,

    Third-Party Plaintiff-Appellant.

_____

BEFORE THE ENTIRE BENCH

TAYLOR, J.

This case presents a dispute under the grandparent visitation statute, MCL 722.27b, between a mother, Theresa Seymour,[1] and a paternal grandmother, Catherine DeRose, who sought visitation with her granddaughter. The trial court

_____

[1] Formerly Theresa DeRose.

ordered limited visitation, and the mother appealed.  The Court of Appeals held that this statute was unconstitutional.  We affirm.

I.  Facts

The child at issue in this case was born during the marriage of Theresa and Joseph DeRose.  In 1997, Joseph DeRose was sentenced to twelve to twenty years in prison after pleading guilty of first-degree criminal sexual conduct (CSC-I) involving his stepdaughter.  Theresa filed for divorce, and a default judgment of divorce was entered the following year.  Theresa was awarded sole legal and physical custody of the child.

While the divorce was pending, Catherine DeRose filed a petition for visitation under the grandparent visitation statute, MCL 722.27b.[2]  Theresa DeRose opposed visitation

---

[2]

(1) Except as provided in this subsection, a grandparent of the child may seek an order for grandparenting time in the manner set forth in this section only if a child custody dispute with respect to that child is pending before the court. . . .

(2) As used in this section, "child custody dispute" includes a proceeding in which any of the following occurs:

(a) The marriage of the child's parents is declared invalid or is dissolved by the court, or a court enters a decree of legal separation with regard to the marriage.

2

because the grandmother denied that her son was guilty of the crimes he admitted committing and, thus, in Theresa's view, contact with the child was not in the child's best interest.

The Friend of the Court, after investigation, concluded that Catherine DeRose lacked standing to bring this petition for visitation. After the grandmother objected, another Friend of the Court investigation took place resulting in a recommendation that the grandmother have two hours of supervised visitation with the child on alternate Saturdays,

---

* * *

(3) A grandparent seeking a grandparenting time order may commence an action for grandparenting time, by complaint or complaint and motion for an order to show cause, in the circuit court in the county in which the grandchild resides. If a child custody dispute is pending, the order shall be sought by motion for an order to show cause. The complaint or motion shall be accompanied by an affidavit setting forth facts supporting the requested order. The grandparent shall give notice of the filing to each party who has legal custody of the grandchild. A party having legal custody may file an opposing affidavit. A hearing shall be held by the court on its own motion or if a party so requests. At the hearing, parties submitting affidavits shall be allowed an opportunity to be heard. At the conclusion of the hearing, if the court finds that it is in the best interests of the child to enter a grandparenting time order, the court shall enter an order providing for reasonable grandparenting time of the child by the grandparent by general or specific terms and conditions. If a hearing is not held, the court shall enter a grandparenting time order only upon a finding that grandparenting time is in the best interests of the child. . . .

increasing to four hours after an eight-month period.

The mother objected to the recommendation, and the case proceeded to a hearing in the Wayne Circuit Court. No testimony or evidence was taken at the hearing. The trial court granted the grandmother's petition, stating:

> But it doesn't strike me that there is any reason here that a child should be deprived of a grandmother. Grandmothers are very important. Grandmothers are very important. [sic] I don't say that just because I am one, but I do believe they are important. I have a niece who doesn't have any and she borrows grandparents and I realize this is difficult, a very difficult time for the 12-year-old, but the 12-year-old is not going to be required to see this lady. Not that it necessarily would be terrible, but I'm not saying it would be good. She is not going to see her. That's not the point.
>
> This is not a motion for custody so that [the child] would be taken away from her sisters for the rest of her life or for a long period of time, even a weekend. This is like two hours of supervised visitation and I know that mom—now, I'm sure mom feels, well, I made a bad choice, I wasn't aware—this, that and the other thing. So now she wants to overcorrect.
>
> It makes no sense to me that this grandmother can't have two hours of supervised visitation and even four hours of supervised visitation as recommended by the Friend of the Court and that's plenty of time to evaluate whether anything bad or wrong happens.
>
> It's very troubling that the concept that somehow this whole incident can just be erased by keeping the child's actual grandmother away from her. It can't be, and everybody is going to have to learn to deal with it which is not happy, it's not good.

* * *

4

It doesn't strike me that a supervised visitation is wrong, so I would affirm the recommendation.

The mother sought relief in the Court of Appeals, arguing that the grandparent visitation statute was unconstitutional.

The Court of Appeals, in a split decision, reversed the decision of the trial court. 249 Mich App 388; 643 NW2d 259 (2002). The panel concluded the grandparent visitation statute was unconstitutional on the basis of the United States Supreme Court decision in *Troxel v Granville*, 530 US 57; 120 S Ct 2054; 147 L Ed 2d 49 (2000), which dealt with a somewhat similar third-party visitation statute in Washington that the Court ruled was unconstitutional. The Court of Appeals approach in deciding this matter was to compare the Washington statute to the Michigan statute to determine if the defects found by the Supreme Court in the Washington statute were mirrored in the Michigan act. Having done that, the Court of Appeals concluded that the Michigan statute was fatally similar to the Washington statute and, thus, it was unconstitutional pursuant to the *Troxel* analysis. As the panel said, "Simply put, if a court in Washington cannot constitutionally be vested with the discretion to grant visitation to a nonparent on the basis of a finding that it is in the child's best interests to do so, then a court in Michigan cannot be obligated under statute to do so based upon

5

the same finding." 249 Mich App 394.

The Court of Appeals also addressed whether, by means of reading "requirements that go beyond the text of the statute," 249 Mich App 395, into the statute, it could cure the constitutional deficiencies. The panel declined to do this because it believed such actions to be the responsibility of the Legislature and beyond the authority of a court.

Catherine DeRose sought relief in this Court, and we granted leave to appeal.[3]

II. Standard of Review

The constitutionality of a statute is reviewed de novo. *Tolksdorf v Griffith*, 464 Mich 1, 5; 626 NW2d 163 (2001). Statutes are presumed constitutional unless the unconstitutionality is clearly apparent. *McDougall v Schanz*, 461 Mich 15, 24; 597 NW2d 148 (1999).

III. Analysis

In 2000, the United States Supreme Court heard and decided the *Troxel* case concerning the constitutionality of third-party visitation. At issue was the state of Washington's third-party visitation statute, Wash Rev Code 26.10.160(3), which was as expansive in granting third parties visitation privileges as can readily be envisioned. It stated:

_____

[3] 467 Mich 884 (2002).

6

> Any person may petition the court for visitation rights at any time including, but not limited to, custody proceedings. The court may order visitation rights for any person when visitation may serve the best interest of the child whether or not there has been a change of [sic, "in"] circumstances. [*Troxel, supra* at 61.]

Operating under this statute, grandparents Jenifer and Gary Troxel sought greater visitation with their grandchildren than the children's mother would allow. The trial court granted visitation under the act, but the Washington Court of Appeals reversed for lack of standing. *Troxel, supra* at 62; *In re Visitation of Troxel*, 87 Wash App 131, 137; 940 P2d 698 (1997). The grandparents appealed, and the Washington Supreme Court, resting its decision on the United States Constitution, held that the statute was unconstitutional because it interfered with the right of parents, pursuant to substantive due process, to raise their children. *Troxel, supra* at 62-63; *In re Smith*, 137 Wash 2d 1, 13-14; 969 P2d 21 (1998). The statute did this, the court opined, because, contrary to relevant, constitutional doctrines on substantive due process, the court could order visitation over the parents' objection without first determining that court intervention was required to prevent harm or potential harm to the child. Moreover, the Washington Supreme Court held that the statute, by allowing any person to petition for visitation at any time subject only to a judge's unguided determination of the best interests of

the child, was so overbroad that it violated constitutional requirements of due process. *Id*. at 30. Accordingly, it was unconstitutional for the additional reason that, as applied, it operated to deprive parents of their constitutionally protected rights to due process.

On appeal the United States Supreme Court also found the statute unconstitutional. The Supreme Court's holding, while clear regarding the outcome, is, unfortunately, written in so many voices that a unifying rationale is difficult to discern. Initially, in reviewing the decision it is important to note that the Court did not, unlike the Washington Supreme Court, analyze the case on the basis of theories implicating facial invalidities such as a violation of substantive due process would entail. In fact, only Justices Souter, Stevens, and Scalia, with three different positions as it developed, used that approach to decide the matter. Moreover, the plurality of four justices for whom Justice O'Connor wrote[4] seemed to deal with what were facial-challenge issues while not fully acknowledging that such was the case. Yet, notwithstanding these difficulties, the Washington statute, when the smoke cleared, was held to be unconstitutional. It falls to us, as it has to other state supreme courts post-*Troxel,* to attempt

---

[4] Justice O'Connor's opinion was joined by Chief Justice Rehnquist, Justice Ginsburg, and Justice Breyer.

8

to determine what at least five of the six justices who came to their conclusion did agree upon. We believe, guardedly, that a majority can be found in the Court's handling of the second issue that the Washington Supreme Court discussed, namely, the statute's overbreadth that caused it to violate parental liberty interests that are protected by the due-process guarantees of the United States Constitution.

The effort to discern where at least five justices agreed must begin with Justice O'Connor's plurality opinion. Its discussion of the law began by restating that, pursuant to established constitutional law, the Fourteenth Amendment's Due Process Clause includes a substantive component that "'provides heightened protection against government interference with certain fundamental rights and liberty interests.'" *Troxel, supra* at 65, quoting *Washington v Glucksberg*, 521 US 702, 720; 117 S Ct 2258; 138 L Ed 2d 772 (1997). One of the liberty interests the Court identified, after characterizing it as perhaps the oldest such interest, is "the interest of parents in the care, custody, and control of their children . . . ." *Troxel, supra* at 65, quoting *Meyer v Nebraska,* 262 US 390, 399, 401; 43 S Ct 625; 67 L Ed 1042 (1923), and *Pierce v Society of Sisters,* 268 US 510, 534-535; 45 S Ct 571; 69 L Ed 1070 (1925). Further, the opinion reaffirmed that it is presumed that "so long as a parent

9

adequately cares for his or her children (*i.e.,* is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's child." *Troxel, supra* at 68-69. See *Reno v Flores*, 507 US 292, 304; 113 S Ct 1439; 123 L Ed 2d 1 (1993).

With this discussion of the rights of parents to substantive due process behind her, Justice O'Connor apparently decided not to resolve the case on that basis. Rather, she continued her discussion by concluding that the Washington statute was an unconstitutional infringement of parental rights because the statute failed to require that a trial court accord deference to the decisions of fit parents regarding third-party visitation. According to Justice O'Connor, in order for a nonparental visitation statute to allow for such deference, it must articulate a presumption that parents act in their children's best interests. Additionally, the statute must place the burden of proof on the petitioner. *Troxel, supra* at 67-70. Moreover, Justice O'Connor asserted that the statute was overbroad because anyone, at any time, could petition for visitation.[5] Thus,

_____

[5] Under the statute, as she described it, should the trial judge disagree with the parent's determination, the judge's determination of what would be in the child's best

her opinion affirmed the Washington Supreme Court decision, but, we emphasize, did not hold that *all* nonparental visitation statutes were facially unconstitutional. *Troxel, supra* at 73.

Justice Souter, in his concurrence, began by asserting that he would affirm the Washington Supreme Court on the basis that its analysis of the issues relating to substantive due process was consistent with the United States Supreme Court jurisprudence in this area. He continued by saying that he saw "no error" in the Washington Supreme Court's second justification that the "statute's authorization of 'any

interests would prevail. Indeed, she concluded that the reasons offered in this case by the trial court in granting visitation indicated nothing more than a simple disagreement with the mother's decision regarding visitation:

> [T]he Superior Court made only two formal findings in support of its visitation order. First, the Troxels "are part of a large, central, loving family, all located in this area, and the [Troxels] can provide opportunities for the children in the areas of cousins and music." Second, "the children would be benefitted from spending quality time with the [Troxels], provided that that time is balanced with time with the childrens' [sic] nuclear family." These slender findings, in combination with the court's announced presumption in favor of grandparent visitation and its failure to accord significant weight to Granville's already having offered meaningful visitation to the Troxels, show that this case involves nothing more than a simple disagreement between the Washington Superior Court and Granville concerning her children's best interests. [*Troxel, supra* at 72 (citations omitted).]

11

person' at 'any time' to petition and to receive visitation rights subject only to a free-ranging best-interest-of-the-child standard" because it swept "too broadly and is unconstitutional on its face." *Id.* at 76-77.[6] As he saw it, this meant that the Washington Supreme Court had said "[c]onsequently, there is no need to decide whether harm is required or to consider the precise scope of the parent's right or its necessary protections." *Id.*

Justice Thomas also concurred that the issues concerning substantive due process were not addressed and that he agreed with the O'Connor plurality in its "recognition of a fundamental right of parents to direct the upbringing of their children . . . ." *Id.* at 80. He then concluded that he would apply strict scrutiny to the "infringements of fundamental rights" by the state of Washington and that the statute failed this test because Washington "lacks even a legitimate governmental interest—to saying nothing of a compelling one—in

---

[6] Justice Souter agreed with the plurality that the statute was unconstitutional because it failed to require a trial court to accord any deference to a fit parent's decision regarding third-party visitation. *Troxel*, *supra* at 78 n 2 (Souter, J., concurring), quoting the plurality:

> As Justice O'CONNOR points out, the best-interests provision "contains no requirement that a court accord the parent's decision any presumption of validity or any weight whatsoever. Instead, the Washington statute places the best-interest determination solely in the hands of the judge." [Citation omitted.]

12

second-guessing a fit parent's decision regarding visitation with third parties." *Id.*

Accordingly, it is from the O'Connor plurality, as well as the opinions of Justices Souter and Thomas, that we must discern the principles that caused them to conclude that the Washington statute was unconstitutional.[7] Once accomplished, we then apply those principles to the Michigan statute to determine if our statute is sufficiently different from the Washington statute at issue in *Troxel* to pass constitutional muster.

First, to isolate the agreed-upon matters between the opinion of Justice O'Connor and those of Justices Souter and Thomas, it appears to us that all six justices agreed that parents have what they described as a "fundamental right" to raise their children.[8] Further, on the basis of this "fundamental right," both Justice O'Connor and Justice Souter found that parents have the right to make decisions for children, and such decisions must be accorded "deference" or "weight." *Troxel, supra* at 67, 78 n 2. Therefore, a

---

[7] We do not review the remaining three opinions by Justices Scalia, Kennedy, or Stevens because of the lack of any relevant shared conclusions by these justices with the O'Connor, Souter, or Thomas positions.

[8] While the plurality and Justice Thomas, concurring, described this as a "fundamental right," *Troxel, supra* at 66, 80, Justice Souter described it as a "substantive interest[]." *Id.,* at 75 (Souter, J., concurring).

13

visitation statute of the sort at issue here must, as we read *Troxel*, require that a trial court accord deference to the decisions of fit parents regarding third-party visitation. That is, it is not enough that the trial court simply disagrees with decisions the parents have made regarding third-party visitation. *Troxel, supra* at 67, 77-78.

The Michigan statute states, in relevant part

(1) Except as provided in this subsection, a grandparent of the child may seek an order for grandparenting time in the manner set forth in this section only if a child custody dispute with respect to that child is pending before the court. . . .

(2) As used in this section, "child custody dispute" includes a proceeding in which any of the following occurs:

(a) The marriage of the child's parents is declared invalid or is dissolved by the court, or a court enters a decree of legal separation with regard to the marriage.

* * *

(3) A grandparent seeking a grandparenting time order may commence an action for grandparenting time, by complaint or complaint and motion for an order to show cause, in the circuit court in the county in which the grandchild resides. If a child custody dispute is pending, the order shall be sought by motion for an order to show cause. The complaint or motion shall be accompanied by an affidavit setting forth facts supporting the requested order. The grandparent shall give notice of the filing to each party who has legal custody of the grandchild. A party having legal custody may file an opposing affidavit. A hearing shall be held by the court on its own motion or if a party so requests. At the hearing, parties submitting affidavits shall be allowed an

14

opportunity to be heard. At the conclusion of the hearing, if the court finds that it is in the best interests of the child to enter a grandparenting time order, the court shall enter an order providing for reasonable grandparenting time of the child by the grandparent by general or specific terms and conditions. If a hearing is not held, the court shall enter a grandparenting time order only upon a finding that grandparenting time is in the best interests of the child. . . . The court shall make a record of the reasons for a denial of a requested grandparenting time order.

There is no indication that the statute requires deference of any sort be paid by a trial court to the decisions fit parents make for their children.[9] Thus, like the Washington statute at issue in *Troxel,* it is for this reason, the fact that our statute fails to require that a trial court accord deference to the decisions of fit parents regarding grandparent visitation, that we find our statute is constitutionally deficient.[10]

---

[9] Moreover, the clear language of MCL 722.27b(3) indicates that the court is only required to make a record of the reasons for its decision in a grandparenting visitation case if visitation is *denied.* Apparently, if visitation is granted, the trial court need not justify its decision with any factual findings or analysis. Thus, rather than giving any "special weight" to the determination of a fit parent, the thrust of this provision appears to favor grandparent visitation in the face of a contrary preference by a fit parent.

[10] It should be noted, however, that the Michigan statute is much narrower than Washington's in conferring standing to pursue visitation. It, thus, appears to us to meet the *Troxel* tests in this regard. Rather than applying to any person at any time, it applies only to grandparents, and only in two situations: where there is a child-custody dispute before the court, or where the unmarried parent is deceased. MCL

## V. Conclusion

Aware of the statute's constitutional infirmities, we must declare it constitutionally invalid. We have not, unlike Justice Kelly's opinion, addressed the "substantive due process" argument, i.e., whether a predicate of any such intervention into the parent-child relationship is a showing of harm or potential harm to the child, because it is not necessary to resolve this case under *Troxel*. Moreover, after *Troxel* it appears that federal constitutional law in this area is now not as predictable as it was before *Troxel*. One cannot read the many opinions in *Troxel* without concluding that an equilibrium has not been reached, and that the Supreme Court may be moving in the direction of rethinking its "substantive due process" jurisprudence so as to make it easier, or more difficult, for the state to intervene by ordering visitation in the parent-child relationship. Because we can decide this case without endeavoring to read the portents on that matter,

---

722.27b(1) and (2). Further, a grandparent may only file once every two years, absent a showing of good cause, MCL 722.27b(4), under procedures articulated at MCL 722.27b(3). Moreover, Michigan's courts cannot restrict the movement of the child solely to allow the grandparent to exercise the rights in the statute. MCL 722.27b(5). Noteworthy also is that the statute carefully sets out that a grandparenting-time order does not confer parental rights in those to whom the visitation is granted, MCL 722.27b(6), and that any orders granted under the act may be modified or terminated when in the best interests of the child, MCL 722.27b(7).

16

we prudentially decline to do so.

In conclusion, bound as we are by the decision in *Troxel*, we are compelled to affirm the judgment of the Court of Appeals and find the Michigan grandparent visitation statute unconstitutional as written.

Affirmed and remanded to the trial court for proceedings consistent with this opinion.

Clifford W. Taylor
Maura D. Corrigan
Michael F. Cavanagh
Robert P. Young, Jr.
Stephen J. Markman

17

THERESA O'DAY DEROSE, also known as
THERESA SEYMOUR,

      Plaintiff Third-Party
      Defendant-Appellee,

v                                                                No.  121246

JOSEPH ALLEN DEROSE,

      Defendant-Appellee,

and

CATHERINE DEROSE,

      Third-Party Plaintiff-Appellant.
_____

WEAVER, J. *(concurring in result)*.

I concur in the result only of the majority opinion that Michigan's grandparent visitation statute, MCL 722.27b, is unconstitutional on its face.

I write separately because I recognize the importance of the grandparent visitation statute and wish to emphasize that grandparent visitation statutes are not unconstitutional per se.  The statutes may be written in such a way that they comply with constitutional requirements.  See *Troxel v Granville,* 530 US 57, 73; 120 S Ct 2054; 147 L Ed 2d 49

(2000). Therefore, I urge the Legislature to amend Michigan's statute to alleviate the constitutional flaws in the statute.

While Michigan's statute is narrower than the statute at issue in *Troxel*,[1] the statute is, nonetheless, flawed for the

---

[1] Michigan's statute is narrower because it only allows grandparents to petition for visitation, rather than any party. Moreover, the statute, MCL 722.27b, limits when a grandparent may petition for visitation, providing in part:

> (1) Except as provided in this subsection, a grandparent of the child may seek an order for grandparenting time in the manner set forth in this section only if a child custody dispute with respect to that child is pending before the court. If a natural parent of an unmarried child is deceased, a parent of the deceased person may commence an action for grandparenting time. Adoption of the child by a stepparent under [MCL 710.21 to 710.70] does not terminate the right of a parent of the deceased person to commence an action for grandparenting time.

> (2) As used in this section, "child custody dispute" includes a proceeding in which any of the following occurs:

> (a) The marriage of the child's parents is declared invalid or is dissolved by the court, or a court enters a degree of legal separation with regard to the marriage.

> (b) Legal custody of the child is given to a party other than the child's parent, or the child is placed outside of and does not reside in the home of a parent, excluding any child who has been placed for adoption with other than a stepparent, or whose adoption by other than a stepparent has been legally finalized.

Under the statute, a grandparent may not file more than once every two years, absent a showing of good cause. MCL 722.27b(4).

2

following reasons: (1) the statute does not provide a presumption that fit parents act in the best interests of their children, (2) the statute fails to accord the fit parent's decision concerning visitation any "special weight," and (3) the statute fails to clearly place the burden in the proceedings on the petitioners, rather than the parents. See *Troxel, supra* at 67-71 (O'Connor, J., plurality opinion). However, as addressed below, each of these constitutional problems can be cured with revisions to the statute and, in fact, many other state statutes include provisions that may alleviate some or all these concerns.

These concerns have been addressed by states such as Utah, where the visitation statute provides, "[t]here is a rebuttable presumption that a parent's decision with regard to grandparent visitation is in the grandchild's best interests. . . ." Utah Code Ann 30-5-2(2). In Nevada, the visitation statute addresses these requirements by providing in pertinent part:

> If a parent of the child has denied or unreasonably restricted visits with the child, there is a rebuttable presumption that the granting of a right to visitation to a party seeking visitation is not in the best interests of the child. To rebut this presumption, the party seeking visitation must prove by clear and convincing evidence that it is in the best interests of the child to grant visitation. [Nev Rev Stat 125C.050(4).]

The Nevada statute explicitly requires the party seeking

3

visitation to rebut the presumption that visitation is not in the child's best interests and to prove that it is in the best interests of the child to grant visitation. In Georgia, "there shall be no presumption in favor of visitation by any grandparent." Ga Code Ann 19-7-3(c). Thus, the burden is on the grandparent seeking visitation to prove an entitlement to visitation under the standards articulated in the Georgia statute. In New Jersey, the burden in the proceedings is explicitly placed on the petitioner. New Jersey's statute states, "It shall be the burden of the applicant to prove by a preponderance of the evidence that the granting of visitation is in the best interests of the child." NJ Stat Ann 9:2-7.1(a).[2] Some states also require the grandparent to demonstrate some sort of preexisting relationship between the grandparent and the child or an effort to establish one as a requisite for seeking visitation. Me Rev Stat Ann tit 19-A, 1803(1); Miss Code Ann 93-16-3(2)(a); Neb Rev Stat 43-1802(2);

---

[2] The New Jersey Superior Court, Appellate Division, rejected a party's constitutional challenge, although there was substance in support of the complaint that this statute was facially unconstitutional, but it did conclude that the statute was unconstitutional as applied in the case before it. *Wilde v Wilde,* 341 NJ Super 381, 386; 775 A2d 535 (2001). Recently, the New Jersey Supreme Court concluded that "grandparents seeking visitation under the statute must prove by a preponderance of the evidence that denial of the visitation they seek would result in harm to the child. That burden is constitutionally required to safeguard the due process rights of fit parents." *Moriarty v Bradt,* ___ NJ ___, ___; ___ A2d ___; 2003 NJ LEXIS 699, 14 (2003).

NC Gen Stat 50-13.2A; Tenn Code Ann 36-6-306(b)(1).[3]

Also, several states address the concerns of *Troxel* by requiring consideration of the effect of a visitation order on the child-parent relationship.[4]  See *Troxel, supra* at 70. Several states specifically require the trial court to determine that visitation will not adversely affect, interfere with, or substantially interfere with the parent-child relationship.  Neb Rev Stat 43-1802(2); NH Rev Stat Ann 458:17-d(II)(b); NJ Stat Ann 9:2-7.1(b)(4); ND Cent Code 14-09-05.1; W Va Code 48-10-501, 48-10-502(5).[5]

---

[3] In *Rideout v Riendeau*, 761 A2d 291, 294 (2000), the Supreme Judicial Court of Maine concluded that Maine's Grandparents Visitation Act, Me Rev Stat Ann tit 19-A, 1801-1805, "as applied to the facts presented to us, is narrowly tailored to serve a compelling state interest, and thus does not violate the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution."

The Mississippi Supreme Court rejected challenges to the constitutionality of Miss Code Ann 93-16-3(1) and 93-16-3(2), respectively, in *Zeman v Stanford,* 789 So 2d 798, 803 (2001), and *Stacy v Ross,* 798 So 2d 1275, 1279 (2001).

[4] MCL 722.23(j) does require the court to consider "[t]he willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents."  However, this language does not explicitly require the trial court to assess the effect of visitation on the parent-child relationship.

[5] In 1993, the North Dakota Supreme Court declared the 1993 amendment of ND Cent Code 14-09-05.1 unconstitutional "to the extent that it require[d] courts to grant grandparents visitation rights with an unmarried minor unless visitation is found not to be in the child's best interests, and presume[d]
(continued...)

5

Additionally, some state grandparent visitation statutes contain a separate list of best-interest factors to consider when deciding whether to award grandparent visitation. See Nev Rev Stat Ann 125C.050; Tenn Code Ann 36-6-307. I do not gather from *Troxel* that a separate list is required; however, it may be something the Legislature would wish to consider.[6]

---

[5](...continued)
visitation rights of grandparents [were] in a child's best interests . . . ." *Hoff v Berg,* 595 NW2d 285, 291 (1999). The Court further declared that the 1983 version of the statute was left intact until its valid repeal or amendment. *Id.* at 292. The current version of North Dakota's statute, which does not include a presumption in favor of grandparent visitation, took effect on August 1, 2001.

The Supreme Court of Appeals of West Virginia held that its grandparent act was constitutional in *State ex rel Brandon L v Moats,* 209 W Va 752, 754, 762-764 (2001). The Court noted that the Legislature recodified the grandparent visitation act but that it did not alter the language of the statutory provisions it was addressing. *Id.* at 754, n 2. The citations in this opinion are to the recodified act.

[6] Michigan's best-interest statute, MCL 722.23, lists the following factors to consider:

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this
(continued...)

The various state provisions cited suggest that it is

⁶(...continued)
state in place of medical care, and other material needs.

(d)  The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e)  The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f)  The moral fitness of the parties involved.

(g)  The mental and physical health of the parties involved.

(h)  The home, school, and community record of the child.

(i)  The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j)  The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents.

(k)  Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(l)  Any other factor considered by the court to be relevant to a particular child custody dispute.

These factors are applicable in the grandparent visitation context.  MCL 722.23 states, "As used in *this act*, "best interests of the child" means the sum total of the following factors . . . ." (Emphasis added.)  "This act" refers to the Michigan Child Custody Act of 1970.  The grandparent visitation statute, MCL 722.27b, is part of "this act."

7

possible to draft a statute that would address the constitutional concerns expressed in *Troxel*.[7]  I urge the

---

[7] The *Troxel* Court declined to address "whether the Due Process Clause requires all nonparental visitation statutes to include a showing of harm or potential harm to the child as a condition precedent to granting visitation." *Troxel, supra* at 73.  Because the *Troxel* Court did not indicate whether it was necessary to demonstrate that the child would be harmed if grandparent visitation were not granted, I express no opinion regarding whether a statute must require such a showing before it can be found constitutional.  I do note that some states have built such a requirement into their statutes.  In Tennessee, for example, the statute states:

> In considering a petition for grandparent visitation, the court shall first determine the presence of a danger of substantial harm to the child.  Such a finding of substantial harm may be based upon cessation of the relationship between an unmarried minor child and the child's grandparent if the court determines, upon proper proof, that:
>
> (A) The child had such a significant existing relationship with the grandparent that loss of the relationship is likely to occasion severe emotional harm to the child;
>
> (B) The grandparent functioned as a primary caregiver such that cessation of the relationship could interrupt provision of the daily needs of the child and thus occasion physical or emotional harm; or
>
> (C) The child had a significant existing relationship with the grandparent and loss of the relationship presents the danger of other direct and substantial harm to the child. [Tenn Code Ann 36-6-306(b)(1).]

See also Ga Code Ann 19-7-3(c).  As stated in n 2, the New Jersey Supreme Court read this requirement into its statute.

Again, I note that *Troxel* declined to state that such a showing of harm to the child was required per se to alleviate

<span>(continued...)</span>

Legislature to revise Michigan's grandparent visitation statute to alleviate the constitutional flaws in the statute.[8]

Elizabeth A. Weaver

_____

[7](...continued)
concerns of substantive due process.  I cite these statutes requiring a finding of harm for informational purposes only.


[8] I note that two House bills were introduced on January 29, 2003, to amend provisions relating to grandparent visitation: House Bill 4104 and House Bill 4105.  See "Michigan Legislature," www.michiganlegislature.org., July 22, 2003.  However, these amendments do not address the constitutional concerns discussed in this opinion.

# STATE OF MICHIGAN

## SUPREME COURT

THERESA O'DAY DeROSE,
also known as THERESA SEYMOUR,

    Plaintiff/Third-Party Defendant
    Appellee,

v                                   No. 121246

JOSEPH ALLEN DeROSE,

    Defendant-Appellee,

v

CATHERINE DeROSE,

    Third-Party Plaintiff
    Appellant.

_____

KELLY, J. (*dissenting*).

    The issue in this case is whether Michigan's grandparent visitation statute[1] is constitutional, either as written or as applied by the trial court. The Court of Appeals held the statute unconstitutional as written, relying on the United States Supreme Court opinion in *Troxel v Granville*, 530 US 57;

_____

[1]MCL 722.27b.

120 S Ct 2054; 147 L Ed 2d 49 (2000). 249 Mich 388; 643 NW2d 259 (2002).

Today, the majority affirms that decision. However, it bases its analysis on an interpretation of *Troxel* that is inaccurate and it operates from the premise that Justice O'Connor, who authored the *Troxel* plurality opinion, misunderstood her own opinion. Moreover, in interpreting Michigan's grandparent visitation statute, the majority invokes fundamental methods of statutory construction, but in application abandons those principles.

While not joining the majority, I do agree that the trial court's visitation order impermissibly infringed Mrs. Seymour's privacy and liberty interests in raising her children. Accordingly, I would affirm the Court of Appeals vacation of the trial court's order granting visitation. However, I would reverse the Court of Appeals holding that the grandparent visitation statute is unconstitutional. Rather, I would hold that it is the trial court's *application* of the statute that is unconstitutional.

## I. The Troxel Decision

The resolution of this case requires a careful examination of the United States Supreme Court opinions in *Troxel v Granville*, *supra*. The Washington Supreme Court held Washington's nonparental visitation statute unconstitutional.

2

On review, a plurality of the members of the United States Supreme Court ruled that the trial court's application of the statute was unconstitutional. "We . . . hold that the application of [the Washington statute] to Granville and her family violated her due process right to make decisions concerning the care, custody, and control of her daughters." It did not hold that the statute was unconstitutional. *Troxel*, 530 US 75.

Thus, the Court left unresolved whether the Washington statute, or similar statutes in other states, could survive in light of the Constitution's protections of the parent-child relationship. Because the Washington Supreme Court's interpretation of the Washington statute was the subject of the *Troxel* decision, it is important to review that statute and understand how it was applied.

A. THE WASHINGTON STATUTE AND THE OPINION OF THE WASHINGTON SUPREME COURT

Section 26.10.160 of the Revised Code of Washington provides, in relevant part:

> (3) Any person may petition the court for visitation rights at any time including, but not limited to, custody proceedings. The court may order visitation rights for any person when visitation may serve the best interest of the child whether or not there has been any change of circumstances.

The facts in *Troxel* were that Tommie Granville and Brad Troxel, although never married, had two daughters. After

their relationship ended, Brad lived with his parents and frequently brought his daughters to their home for weekend visitations. Two years after Tommie and Brad separated, Brad committed suicide. After his death, Tommie Granville allowed Brad's parents extended visitation with the children. Later, however, she informed them that the visitation would be limited to one short visit each month.

The grandparents, the Troxels, brought an action in Washington state court for visitation rights pursuant to Wash Rev Code 26.10.160(3), Washington's nonparent visitation statute. They requested two weekends of overnight visitation per month and two weeks of visitation every summer. Although Granville did not oppose visitation altogether, she asked the court to limit it to one day a month with no overnight visitation. *In re Troxel*, 87 Wash App 131, 133-134; 940 P2d 698 (1997). The trial court entered an order permitting visitation on one weekend a month, one week each summer, and four hours on each of the grandparents' birthdays. *In re Smith*, 137 Wash 2d 1, 6; 969 P2d 21 (1998).

Granville appealed from this decision, and the Washington Court of Appeals remanded for findings of fact and conclusions of law. *In re Smith*, *supra*. On remand, the trial court, applying the state's best interests test, concluded that visitation was in the best interests of the children.

Granville again appealed.  This time, the Washington Court of Appeals reversed the trial court order and dismissed the petition.  It held that nonparents lack standing under Washington's nonparental visitation statute, unless a custody action is pending.  Having resolved the matter on the basis of standing, the court had no need to address Granville's constitutional challenge to the statute.[2]  *In re Troxel*, 87 Wash App 138.

The Washington Supreme Court granted the Troxels' petition for review and consolidated their case with similar cases.  It then affirmed the Washington Court of Appeals decision on a separate basis.  It held that the Troxels had standing to petition for visitation under the Washington act.  However, the act was unconstitutional because it impermissibly infringed the fundamental rights of parents to raise their children.

In reaching this conclusion, the Washington Supreme Court stated that the act had at least two fatal flaws:  (1) it was not limited to situations where there was actual or potential harm to the child, which the Washington Supreme Court held

_____

[2]The court did state that this limitation on nonparental visitation is "consistent with the constitutional restrictions on state interference with parents' fundamental liberty interest in the 'care, custody, and management' of their children."  *In re Troxel*, 87 Wash App 135, quoting *Santosky v Kramer*, 455 US 745, 753; 102 S Ct 1388; 71 L Ed 2d 599 (1982).

5

were the limits of legitimate state interference with parental rights, and (2) because the statute allowed "any person" to petition for visitation rights at "any time," it swept too broadly. *In re Smith*, 137 Wash 2d 15-21.

The Troxels brought a petition for certiorari to the United States Supreme Court. The Court granted it and affirmed the Washington Supreme Court in a plurality opinion authored by Justice O'Connor.[3]

B. THE UNITED STATES SUPREME COURT DECISION

A review of the various opinions of the justices is helpful for the purpose of determining the consistent rule among them, if any.

1. THE OPINION OF THE COURT

Justice O'Connor began the substantive portion of her opinion by noting that demographic changes over the past century have altered traditional notions of the family. Consequently, child rearing responsibilities frequently extend beyond immediate family members to grandparents. In recognition of this change, she noted, every state has adopted a measure protecting the relationship between grandparents as nontraditional caregivers and the children whose lives they

---

[3]Justice O'Connor was joined in the opinion by Chief Justice Rehnquist and Justices Ginsburg and Breyer. Justices Souter and Thomas concurred on alternative bases. Justices Stevens, Scalia, and Kennedy each authored dissents.

6

shape.  *Troxel*, 530 US 63-65.

While acknowledging that "third-party" relationships are often beneficial to children, Justice O'Connor also recognized that nonparental visitation statutes place a substantial burden on the parent-child relationship.  *Id*. at 64.  Because parents have a constitutionally protected interest in the care, custody, and control of their children, these statutes risk violating the Due Process Clause of the Fourteenth Amendment.  *Washington v Glucksburg*, 521 US 702, 719-720; 117 S Ct 2258; 138 L Ed 2d 772 (1997); *Reno v Flores*, 507 US 292, 301-302; 113 S Ct 1439; 123 L Ed 2d 1 (1993).

Justice O'Connor relied on the Court's rich history of protecting the parent-child relationship[4] and concluded that the trial court's application of the Washington nonparental visitation statute was unconstitutional.  *Troxel*, 530 US 75. She emphasized that the statute is broad in scope and that, when applying it, the trial court had gone to the full extent of the its language in entering the visitation order.  *Id*. at 73-75.  She noted concern that the order gave visitation that

---

[4]See, e.g., *Meyer v Nebraska*, 262 US 390; 43 S Ct 625; 67 L Ed 1042 (1923); *Pierce v Society of Sisters*, 268 US 510; 45 S Ct 571; 69 L Ed 1070 (1925); *Prince v Massachusetts*, 321 US 158; 64 S Ct 438; 88 L Ed 645 (1944); *Stanley v Illinois*, 405 US 645; 92 S Ct 1208; 31 L Ed 2d 551 (1972); *Wisconsin v Yoder*, 406 US 205; 92 S Ct 1526; 32 L Ed 2d 15 (1972); *Quilloin v Walcott*, 434 US 246; 98 S Ct 549; 54 L Ed 2d 511 (1978); *Parham v J R*, 442 US 584; 99 S Ct 2493; 61 L Ed 2d 101 (1979); *Santosky, supra*.

exceeded Granville's wishes even though (1) Granville had allowed limited visitation to the Troxels, (2) there was no indication that Granville was an unfit parent, and (3) Granville had made her own legitimate determination of the child's best interests. *Id*. at 68-72.

## 2. THE CONCURRING OPINIONS

Justice Souter concurred in the result and in a portion of Justice O'Connor's reasoning. He opined that the Washington Supreme Court's invalidation of the statute was consistent with the Court's jurisprudence on substantive due process. *Troxel*, 530 US 75-76. He relied on the fact that the Washington Supreme Court had construed the statute to allow any person to petition for visitation at any time, subject only to a court's unfettered discretion. Justice Souter differed from Justice O'Connor in that he would have held that the Washington Supreme Court's interpretation of the statute was conclusive. Thus, the statute was overbroad because it did not limit the discretion of the lower courts. As a consequence, it was invalid in all its applications. *Id.* at 77-79, citing *Chicago v Morales*, 527 US 41, 71; 119 S Ct 1849; 144 L Ed 2d 67 (1999).

Justice Thomas concurred only in the result of the plurality opinion. He stated that, because the Court had found a fundamental interest, strict scrutiny must apply and,

under that standard, the statute was invalid. *Troxel*, 530 US 80.

### 3. THE DISSENTING OPINIONS

With one exception, the dissenting justices did not argue that a different result was warranted. Rather, Justices Stevens and Kennedy would have vacated the Washington Supreme Court decision because the opinion itself was too broad.

Common to both these opinions is a focus on arbitrariness. Justice Stevens and Justice Kennedy agreed that the Due Process Clause forbids unreasonable state intrusion into the parent-child relationship. Both justices agreed that, at some point, a parental decision might become so arbitrary that judicial intrusion is warranted.

The question for these justices was whether the best interests test, standing alone, is a sufficient indicator of arbitrariness. Because the Washington Supreme Court failed to address this issue, Justices Stevens and Kennedy would have vacated the Washington Supreme Court decision and remanded the case for further findings.

Justice Scalia took a different approach. He argued that, while a parent's interest in directing a child's upbringing is among the unalienable rights retained by the

people,[5] the right is not enumerated in the Constitution. Accordingly, while a state may have no legitimate power to curtail the right, the Court has no power to enforce it. Justice Scalia would have reversed the Washington Supreme Court decision to the extent that it relied on the Due Process Clause of the Fourteenth Amendment in holding the Washington statute invalid.

## 4. THE COMPOSITE OPINION

The *Troxel* plurality decision is capable of reconciliation in, at least, one respect. With one justice dissenting and one concurring in the result only, the Court held that the Due Process Clause of the Fourteenth Amendment protects parents' fundamental interest in raising their children. Thus, a state may not unduly interfere in the parent-child relationship. At a minimum, state interference in the relationship is not permitted unless a parent has made a decision regarding visitation that is not in the child's' best interests.

## II. APPLICATION

Determining whether the Michigan grandparent visitation statute is constitutional requires the following analysis: First, the fundamental interest at stake should be defined. Second, the statute should not infringe this interest. Third,

---

[5]See US Const, Am IX.

if it infringes, a strict scrutiny test must be applied to it. In applying this analysis, we attempt to give effect to legislative intent. *Omelenchuk v City of Warren*, 466 Mich 524, 528; 647 NW2d 493 (2002).

When we review a statute on the basis of a constitutional challenge, we begin with a presumption that it is constitutional. *Taylor v Gates Pharmaceuticals*, 468 Mich 1, 6; 658 NW2d 127 (2003). To overcome the presumption of constitutionality, the party challenging the facial constitutionality of the act "must establish that no set of circumstances exists under which the act would be valid. The fact that the . . . act might operate unconstitutionally under some conceivable set of circumstances is insufficient . . . ." *Straus v Governor*, 459 Mich 526, 543; 592 NW2d 53 (1999), quoting *United States v Salerno*, 481 US 739, 745; 107 S Ct 2095; 95 L Ed 2d 697 (1987).

Moreover, we have a duty to construe a statute as constitutional, unless its unconstitutionality is clearly apparent. *Taylor*, *supra*. Beyond the question of constitutionality, it is not our province to inquire into the wisdom of the legislation. *Id.*, citing *Council of Organizations & Others for Ed About Parochiaid, Inc v Governor*, 455 Mich 557, 570; 566 NW2d 208 (1997).

## A. The nature of the right involved

The fundamental interest at stake in this case is the parent-child relationship. There can be

> no doubt that parents have a fundamental liberty interest in caring for and guiding their children, and a corresponding privacy interest—absent exceptional circumstances—in doing so without the undue interference of strangers to them and to their child. [*Troxel*, 530 US 87 (opinion of Stevens, J.).]

"It is cardinal . . . that the custody, care and nurture of the child reside first in the parents . . . ." *Prince v Massachusetts*, 321 US 158, 166; 64 S Ct 438; 88 L Ed 645 (1944). Thus,

> [i]t is plain that the interest of a parent in the companionship, care, custody, and management of his or her children "come[s] . . . with a momentum for respect lacking when appeal is made to the liberties which derive merely from shifting economic arrangements." [*Stanley v Illinois*, 405 US 645, 651; 92 S Ct 1208; 31 L Ed 2d 551 (1972), citing *Kovacs v Cooper*, 336 US 77, 95; 69 S Ct 448; 93 L Ed 513 (1949) (Frankfurter, J, concurring).]

Because the Constitution recognizes this fundamental interest, a presumption has been created that the "natural bonds of affection lead parents to act in the best interests of their children." *Parham v J R*, 442 US 584, 602; 99 S Ct 2493; 61 L Ed 2d 101 (1979). Consequently, a state interest will rarely be sufficiently compelling to override parents' legitimate decisions regarding the care, custody, or management of their children.

Michigan's grandparent visitation statute states:

(1) Except as provided in this subsection, a grandparent of the child may seek an order for grandparenting time in the manner set forth in this section only if a child custody dispute with respect to that child is pending before the court. If a natural parent of an unmarried child is deceased, a parent of the deceased person may commence an action for grandparenting time. Adoption of the child by a stepparent under [MCL 710.21 to 710.70] does not terminate the right of a parent of the deceased person to commence an action for grandparenting time.

(2) As used in this section, "child custody dispute" includes a proceeding in which any of the following occurs:

(a) The marriage of the child's parents is declared invalid or is dissolved by the court, or a court enters a decree of legal separation with regard to the marriage.

(b) Legal custody of the child is given to a party other than the child's parent, or the child is placed outside of and does not reside in the home of a parent, excluding any child who has been placed for adoption with other than a stepparent, or whose adoption by other than a stepparent has been legally finalized.

(3) A grandparent seeking a grandparenting time order may commence an action for grandparenting time, by complaint or complaint and motion for an order to show cause, in the circuit court in the county in which the grandchild resides. If a child custody dispute is pending, the order shall be sought by motion for an order to show cause. The complaint or motion shall be accompanied by an affidavit setting forth facts supporting the requested order. The grandparent shall give notice of the filing to each party who has legal custody of the grandchild. A party having legal custody may file an opposing affidavit. A hearing shall be held by the court on its own

13

motion or if a party so requests. At the hearing, parties submitting affidavits shall be allowed an opportunity to be heard. At the conclusion of the hearing, if the court finds that it is in the best interests of the child to enter a grandparenting time order, the court shall enter an order providing for reasonable grandparenting time of the child by the grandparent by general or specific terms and conditions. If a hearing is not held, the court shall enter a grandparenting time order only upon a finding that grandparenting time is in the best interests of the child. A grandparenting time order shall not be entered for the parents of a putative father unless the father has acknowledged paternity in writing, has been adjudicated to be the father by a court of competent jurisdiction, or has contributed regularly to the support of the child or children. The court shall make a record of the reasons for a denial of a requested grandparenting time order.

(4) A grandparent may not file more than once every 2 years, absent a showing of good cause, a complaint or motion seeking a grandparenting time order. If the court finds there is good cause to allow a grandparent to file more than 1 complaint or motion under this section in a 2-year period, the court shall allow the filing and shall consider the complaint or motion. The court may order reasonable attorney fees to the prevailing party.

(5) The court shall not enter an order restricting the movement of the grandchild if the restriction is solely for the purpose of allowing the grandparent to exercise the rights conferred in a grandparenting time order.

(6) A grandparenting time order entered in accordance with this section shall not be considered to have created parental rights in the person or persons to whom grandparenting time rights are granted. The entry of a grandparenting time order shall not prevent a court of competent jurisdiction from acting upon the custody of the child, the parental rights of the child, or the adoption of the child.

(7) The court may enter an order modifying or

terminating a grandparenting time order whenever such a modification or termination is in the best interests of the child. [MCL 722.27b.]

It is evident that, like the Washington statute, Michigan's grandparent visitation statute infringes the parents' liberty interest in directing the upbringing of their children. It does this by allowing third parties to insert themselves into the relationship over a parent's objection. Thus, if the statute is allowed to stand, it must pass the strict scrutiny test.

## C. APPLICATION OF STRICT SCRUTINY TO THE STATUTE

In order to meet strict scrutiny, a statute must be narrowly tailored to serve a compelling governmental interest. In the realm of fundamental rights, this test takes on substantial weight. The very concept of a liberty interest presumes that there are few, if any, governmental interests that will meet this burden. Moreover, a court's application of an otherwise valid statute is invalid if it extends beyond the limits of constitutional authority.

The majority holds that our grandparent visitation statute cannot withstand constitutional scrutiny. Specifically, it rules that the unconstitutionality lies in its failure to "accord deference to the decisions of fit parents regarding grandparent visitation." *Ante* at 15.

It is apparent to me that this conclusion rests on an

15

unnecessarily strict interpretation of the statute. It violates the principle that "'[a] text should not be construed strictly, and it should not be construed leniently; it should be construed reasonably to contain all that it fairly means.'" Corrigan & Thomas, "Dice Loading" Rules of statutory interpretation, 59 NYU Ann Surv Am L 231, 231-232 (2003), quoting Scalia, *A Matter of Interpretation: Federal Courts and the Law* (Princeton, N.J.: Princeton University Press, 1997), p 23.

### 1. FACIAL VALIDITY

#### a. COMPELLING GOVERNMENT INTEREST

"A democratic society rests, for its continuance, upon the healthy, well-rounded growth of young people into full maturity as citizens . . . ." *Prince v Massachusetts,* 321 US 158, 168; 64 S Ct 438; 88 L Ed 645 (1944). Accordingly, "[i]t is evident beyond the need for elaboration that a State's interest in 'safeguarding the physical and psychological well-being of a minor' is 'compelling.'" *New York v Ferber*, 458 US 747, 756-757; 102 S Ct 3348; 73 L Ed 2d 1113 (1982), quoting *Globe Newspaper Co v Superior Court*, 457 US 596, 607; 102 S Ct 2613; 73 L Ed 2d 248 (1982). Therefore, we may sustain legislation aimed at protecting the physical and emotional well-being of youth even when the legislation impinges on constitutionally protected rights. *Ferber*, *supra* at 757.

Our grandparent visitation statute is meant to protect children's well-being by providing for visitation when it is in their best interests.  Thus, the statute must be upheld if it is narrowly tailored to address this compelling interest.

### b. NARROWLY TAILORED

By its terms, the Michigan grandparent visitation statute is substantially more narrow than the Washington statute.  For instance, the Washington statute allowed any person the ability to bring a petition for visitation at any time.  By contrast, the Michigan statute allows only grandparents to petition for visitation and only under circumstances where a prior disturbance in the parent-child relationship limits the effect of the intrusion.  The Legislature allows court-ordered nonparental visitation only where (1) the relationship between the child and the petitioner is that of grandchild-grandparent, and (2) the petition for visitation is made during the pendency of a child custody dispute or the natural parent of the unmarried child is deceased.

The crucial fact in this case is that the Michigan statute, like the Washington statute, employs a best-interests-of-the-child standard to determine whether a court should issue a visitation order.  The inclusion of this standard constituted the ultimate flaw in the Washington statute; once a petition was properly before a Washington

court, the act gave the judge unfettered discretion to determine whether to award visitation.[6]  Thus, I would agree with the majority that, unless our Legislature has otherwise limited our trial courts' discretion in awarding visitation to grandparents, we must hold the statute unconstitutional.

The majority is apparently persuaded by the argument that the statute includes a presumption in favor of awarding grandparent visitation.  *Ante*, at 15, n 10.  However, this interpretation runs afoul of the basic tenet that a statute is presumed constitutional.  The majority incorrectly states that the statute does not require a trial court to justify its decision to award grandparent visitation with any factual findings or analysis.  To the contrary, the statute forbids a court from entering a grandparent visitation order unless it "finds that it is in the best interests of the child . . . ." MCL 722.27b(3).  Under our court rules, the court must place its findings of fact and conclusions of law on the record. MCR 3.210(D) and 2.517(A)(1).

The Michigan statute does not include the most restrictive terms possible, but it need not do so to pass constitutional muster.  Indeed, a statute may be

---

[6]Unlike the Michigan grandparent visitation statute, the Washington statute never defined the factors to consider before a court could find that a visitation order is in the "best interests of the child."

18

constitutional even though it lacks provisions that meet constitutional requirements. As long as it has terms not excluding such requirements, a court is justified in finding that constitutional requirements are embodied in the statute. *Council of Organizations,* 455 Mich 569, quoting 16 Am Jur 2d, Constitutional Law, § 225, p 659.

Moreover, the grandparent visitation statute does not exist in a vacuum. It is part of an extensive statutory scheme, the Child Custody Act of 1970,[7] that guides the resolution of disputes regarding custody and visitation rights. The grandparent visitation statute cannot properly be interpreted without reference to applicable provisions of the Child Custody Act. Cf. *Arrowhead Dev Co v Livingston Co Rd Comm*, 413 Mich 505, 516; 322 NW2d 702 (1982). Specifically, the grandparent visitation statute must be read in conjunction with MCL 722.23 and MCL 722.25, which contain the state's best interests standard.

Of particular importance is MCL 722.23(l), which requires that courts take into account any unnamed factor relevant to a dispute. One such factor always present in grandparent visitation disputes must be the constitutional rights of the

---

[7]MCL 722.21 *et seq.*

19

parents.[8]

Additionally, MCL 722.25 works collectively with MCL 722.23 to protect parents' constitutional rights. MCL 722.25(1) provides that

> [i]f a child custody dispute is between the parents, between agencies, or between third persons, the best interests of the child control. If the child custody dispute is between the parent or parents and an agency or a third person, the court shall presume that the best interests of the child are served by awarding custody to the parent or parents, unless the contrary is established by clear and convincing evidence.

This analysis supports the conclusion that our grandparent visitation statute is drawn more narrowly than the statute at issue in *Troxel*. It also demonstrates that, in drafting the statute, our Legislature was concerned with protecting parents' fundamental interest in raising their children.

Accordingly, when the Legislature enacted the grandparent visitation statute, it saw fit to explicitly require that trial courts give deference to a fit parent's decisions regarding grandparent visitation. The majority's argument that the provisions requiring deference are inapplicable in the context of grandparent visitation are untenable. The

---

[8]See *Winekoff v Pospisil*, 384 Mich 260, 267-268; 181 NW2d 897 (1970), *quoting Lake Shore & M S R Co v Miller*, 25 Mich 274, 291-292 (1872)("[C]ourts are bound judicially to know and apply such laws and principles as part of the law of the land.").

20

Legislature resolved this issue by including grandparent visitation within the gamut of custody disputes.[9]  Therefore, because it is narrowly tailored to serve a compelling governmental interest, the statute is constitutional.

### 2. THE TRIAL COURT'S APPLICATION OF THE STATUTE

Although I believe that the grandparent visitation statute is valid, the visitation order must be overturned because it unduly infringes Mrs. Seymour's constitutionally protected interest in raising her children.  The record indicates that the order far exceeded the discretion that the Legislature gave the trial court.  The basis for the order was the court's conclusion that "grandmothers are very important." This statement shows that the trial court's decision involved "nothing more than a simple disagreement between the [trial court and Theresa DeRose] concerning her children's best interests."  *Troxel*, 530 US 72 (opinion of O'Connor, J.);

---

[9]MCL 722.27(1) provides in pertinent part:

> If a child custody dispute has been submitted to the circuit court as an original action under this act or has arisen incidentally from another action in the circuit court or an order or judgment of the circuit court, for the best interests of the child the court may do 1 or more of the following:
>
> * * *
>
> (f) Upon petition consider the reasonable grandparenting time of maternal or paternal grandparents as provided in section 7b . . . .

21

*Parham*, 442 US 603.[10]

Moreover, this case is less difficult than was *Troxel*. Here, Mrs. Seymour not only made a legitimate decision concerning her child, she demonstrated that she made the decision to protect the integrity of her family. Had Mrs. DeRose been allowed to continue visitation with Mrs. Seymour's daughter, she could have continued to tell the child that Mrs. Seymour's ex-husband was not guilty of sexually abusing the child's sister. The potential harm to both children is a legitimate concern.

Mrs. DeRose has failed to demonstrate that Mrs. Seymour's

---

[10]Compare this statement with those made by the trial court in *Troxel*:

> The burden is to show that it is in the best interest of the children to have some visitation and some quality time with their grandparents. I think in most situations a commonsensical approach [is that] it is normally in the best interest of the children to spend quality time with the grandparent, unless the grandparent, [sic] there are some issues or problems involved wherein the grandparents, their lifestyles are going to impact adversely upon the children. That certainly isn't the case here from what I can tell.

> \* \* \*

> I look back on some personal experiences . . . . We always spent as kids a week with one set of grandparents and another set of grandparents, [and] it happened to work out in our family that [it] turned out to be an enjoyable experience. Maybe that can, in this family, if that is how it works out. [*Troxel,* 530 US 69, 72.]

decision was not in the best interests of her children.  The evidence demonstrated that Mrs. Seymour's concern for the integrity of her family motivated her decision.  This concern is the basis of the liberty interest at stake in this case. See *Caban v Mohammed*, 441 US 380, 397; 99 S Ct 1760; 60 L Ed 2d 297 (1979); *Lehr v Robertson*, 463 US 248, 260-261; 103 S Ct 2985; 77 L Ed 2d 614 (1983); *Michael H v Gerald D*, 491 US 110, 123; 109 S Ct 2333; 105 L Ed 2d 91 (1989).  Accordingly, I would hold that the visitation order is an unconstitutional abuse of the discretion granted it by the Michigan grandparent visitation statute.

CONCLUSION

Parents' fundamental right to control the upbringing of their children is protected by the Due Process Clause of the Fourteenth Amendment.  The state may not interfere with this right unless the means of interference are narrowly tailored to serve a compelling governmental interest.

It is beyond dispute that our grandparent visitation statute serves a compelling governmental interest.  It promotes the well-being of our children by allowing visitation between children and grandparents when visitation is in the best interests of the children.  Thus, the statute must be upheld if it is narrowly tailored to serve this interest.

I believe that the Michigan grandparent visitation

23

statute is sufficiently narrow in scope to meet this standard. As opposed to the statute under scrutiny in *Troxel*, the Michigan statute allows only grandparents to petition our courts for nonparental visitation. Also, the only occasions when grandparents may be granted visitation against a parent's wishes are during the pendency of a child custody dispute or after the death of a natural parent.

Moreover, the Child Custody Act is written to protect parents' fundamental interest in raising their children. Under it, grandparents obtain visitation only if they can prove, by clear and convincing evidence, that a parent's decision regarding visitation is not in the best interests of the children. Additionally, the act limits the discretion a court can exercise in determining the children's best interests. Therefore, it is narrowly tailored.

However, the trial court's finding that grandmothers are important is insufficient to support the order issued in this case. "[T]he Due Process Clause does not permit a State to infringe on the fundamental right of parents to make childrearing decisions simply because a state judge believes a 'better' decision could be made." *Id.* at 72-73.

In this case, the trial court substituted its opinion concerning the value of grandparent visitation for that of Mrs. Seymour. The trial court overrode Mrs. Seymour's

legitimate decision concerning the upbringing of her children without finding clear and convincing evidence on the basis of the best interest factors.  Consequently, the visitation order was an undue burden on the relationship between Mrs. Seymour and her daughters.

In the end, I differ significantly with the majority in my interpretation of the grandparent visitation statute.  In my opinion the majority has ignored the text of the Child Custody Act.  It has chosen instead to follow the example of the Washington Supreme Court by needlessly illegitimizing our grandparent visitation statute.  Moreover, it has failed to provide the Legislature with guidance in drafting a statute that the Court could find constitutional.

Because it is clear to me that the visitation order was unconstitutional, I would affirm the decision of the Court of Appeals to vacate it.  *Troxel*, 530 US 75.  However, I would not find the grandparent visitation statute unconstitutional. I would find, merely, that the trial court's *application* of the statute was unconstitutional in this instance.

Marilyn Kelly